Argued September 17; permanent disbarment ordered October 14, 1942

IN RE SCHMALZ

(129 P. (2d) 825)

Before KELLY, Chief Justice, and BELT, BAILEY, LUSK and BRAND, Associate Justices.

*H. H. DeArmond*, of Bend, for petitioner H. V. Schmalz.

*Charles H. Heltzel*, of Salem, for Oregon State Bar.

LUSK, J. The petitioner, H. V. Schmalz, an attorney, was accused by the Oregon State Bar of unprofessional conduct, and, after a hearing, was found guilty. The Board of Governors of the Oregon State Bar has recommended that he be permanently disbarred from the practice of law. Schmalz has sought review of the recommendation pursuant to the provisions of 4 O. C. L. A., § 47-213.

The charges, nine in number, relate to the conduct of the petitioner as executor of the estate of Sarah Hamilton Brown, deceased. He was found guilty on all the charges except one, which was withdrawn at the hearing. With some minor exceptions the petitioner concedes the truth of the charges in the sense that he did the acts alleged; he admits that he is deserving of some punishment; but he denies wilful wrongdoing and corrupt intent, and asserts that at the worst his offense amounts to no more than negligence in the administration of his trust. Our task, therefore, is the difficult one of appraising the moral implications of his conduct, with a view to determining a fitting penalty.

Schmalz has practiced law in Burns, Oregon, since the year 1914 and is now the district attorney of Harney county. Sarah Hamilton Brown, a client, named him the executor of her will, and, upon her death in November 1934, Schmalz was appointed executor to serve without bond by the county court for Harney county. He acted in that capacity, and also as his own attorney, until November 1939, when he was removed under circumstances to be hereinafter related.

It is admitted that Schmalz as executor reported to the court that he had received the sum of $7,000 from

rental of lands belonging to the Brown estate, whereas, in truth, he had received $7,750; that he reported to the court that he had paid $250 from the funds of the estate to the First National Bank of Ontario, though no payment to the bank in that or any other amount had been made; that he mailed to Miss Jane Roberts of Holyhead, England, the sole residuary devisee and legatee under the will of Sarah Hamilton Brown, deceased, a purported copy of a final report and account, which showed payment to himself from the funds of the estate for services rendered to Sarah Hamilton Brown, deceased, in her lifetime of the sum of $850, while his accounting filed with the court stated that the amount of such payment was $350; that he also included in said purported copy an item of disbursements reading "other small bills paid—$67.40", while, in the accounting filed with the court, this amount was stated to be $7.40; and that he reported to the court that he paid from the funds of the estate on a promissory note executed by the decedent to one William Dale the sum of $761.30 when actually he had paid only $322.80. These and other acts not necessary to be detailed are the basis of charges filed against the accused. Whether they amount to no more than culpable carelessness must be determined from the circumstances.

On November 3, 1936, Mr. T. Haines-Roberts, an English solicitor representing Miss Roberts, the heir, wrote to Schmalz urging him to close the administration of the estate. Schmalz answered this letter on January 29, 1937, enclosing "a copy of my final report" and stating "as you will note I am closing up the estate of Sarah H. Brown now". The copy of his so-called final report enclosed with this letter is the

one previously referred to on which appear certain items of disbursements which differ in amount from the corresponding items in the report actually filed with the court on March 1, 1937. The latter document bears evidence on its face that the second sheet thereof, on which the disbursements in question are reported, had been substituted for the original second sheet.

In November, 1939, the administration of the estate was still uncompleted, and in that month Mr. John D. Williams, an attorney of Portland, who had been retained to represent the heir, filed a petition in the county court for Harney county to have Schmalz removed as executor and himself appointed administrator *de bonis non*. An order was made accordingly on November 21, 1939, Schmalz acquiescing. At that time Williams and Schmalz reached an agreement as to the amount of the latter's fees and a tentative understanding as to the correctness of a final account filed by Schmalz, and in the preparation of which Williams co-operated. The account showed cash on hand $819.66, and this amount was paid to Williams by Schmalz. In the settlement Schmalz was given credit for an item of $250 which he claimed to have paid out of funds of the estate to the First National Bank of Ontario, but, as he was unable to produce a receipt or any other record of this payment, he and Williams agreed orally that unless Schmalz should be able later to verify the item he would make it good, and they further agreed that any other error in the account which might later be discovered would be rectified by the party benefiting by such error. Schmalz gave this same assurance to the county judge. These negotiations were friendly, and Schmalz apparently was

making a sincere effort at that time to assist Williams in ascertaining the true condition of the estate, a difficult matter owing to the negligence of Schmalz in not keeping proper records and accounts.

Schmalz was never able to produce evidence of the $250 payment to the First National Bank of Ontario—which he now admits was never made—and Williams learned from the bank that it had no record of such payment and so notified Schmalz. But, as Schmalz did not make good the deficiency, Williams employed Mr. John T. Casey, an attorney of Burns, to collect the amount. After Casey had demanded payment of Schmalz, the latter, under date of June 1, 1940, mailed Williams a check for $250 with an endorsement typed on the back thereof releasing Schmalz from all claims which Williams, as attorney in fact for Jane Roberts, might have against him. In the letter accompanying this check Schmalz threatened to sue Williams for slander. Williams replied on June 3, 1940, refusing to accept payment under those conditions and calling Schmalz' attention to the other errors in his accounting, which he had discovered in the meantime, and which became the basis of the charges now under consideration. He notified Schmalz that he had authorized the firm of Casey & Kriesien to represent him in all these matters, one of which was the rental account. Mr. Casey obtained evidence of the amount of the rent actually collected, to-wit, $7,750, instead of $7,000 as accounted for by Schmalz, and submitted the figures to Schmalz in a letter dated June 8, 1940, but the latter contended that the amount was only $6,750. Whether or not this was a good faith contention in the beginning, the evidence shows conclusively that Schmalz continued to dispute the claim after he knew the facts; his

testimony on the point is conflicting and unsatisfactory. It should be observed here that he testified that he thought he deposited the $750 of rent unaccounted for in his personal bank account.

In his letter to Schmalz, Casey also referred to the error in the final account with respect to payments claimed to have been made on the note executed by Mrs. Brown to William Dale. He directed Schmalz' attention to the fact that in his various accountings Schmalz had reported total payments on this obligation to the extent of $761.30 and that this amount was reduced to $322.80 in the settlement between Schmalz and Williams. He informed Schmalz that Mrs. Brown in her lifetime had paid $533 on the note as evidenced by cancelled checks in his possession; that this amount, added to the sum of $322.80 for which Schmalz was given credit in his final account, would make a total payment on the obligation of $855, which would be $278 in excess of the full amount of the note plus interest to the date of discharge.

In Schmalz' reply to Casey's letter he made no mention of this matter whatever, nor did he mention it in any of the letters which he wrote to Williams. He did, however, in a conversation with Casey offer to pay the sum of $500 in full settlement of the latter's demands, which amounted to more than $1,300.

Finally, by letter dated June 28, 1940, Schmalz advised Williams that his final account should be amended so as to show total income of $8,299 and disbursements $9,447.84. The former figure is exactly $750 in excess of the total receipts reported in the final account filed November 29, 1939; the latter is $2,713.30 in excess of the disbursements so reported. The difference between the two figures, $1,148.84,

would have entitled Schmalz to reimbursement from the estate instead of being in debt to it, as acknowledged by him in his final account. With the exception of a few small items which Schmalz claimed to have paid out on behalf of the estate and not reported (for some of which he produced cancelled vouchers on the hearing), the additional items for which he claimed credit, as stated in his letter to Williams of June 28, 1940, were as follows:

"Professional Services rendered Sarah Brown prior to her death, $400.00; personal services, $100.00; executor fees and attorney fees, $750.00; management of the ranch for five years, soliciting prospective renters, leasing the premises, collecting the rent and general supervision for the year 1935, $500.00; 1936, $500.00; 1937, $375.00; 1938, $375.00; 1939, $187.50."

Not being able to collect by persuasion, Mr. Williams, as attorney for Jane Roberts, was forced to file a suit against Schmalz for an accounting, which he did on November 8, 1940. Schmalz engaged counsel, and the suit was ultimately settled by the filing in court of a stipulation pursuant to which Williams accepted from the petitioner the sum of $850 in settlement of all claims growing out of Schmalz' acts in connection with the estate of Sarah H. Brown, deceased.

The trial committee found that the petitioner "knowingly and wilfully refused to account" for $750 rent received by him as executor; that his claim that he paid $250 to the First National Bank of Ontario "was false and fraudulent or the said accounts were made, verified and filed by the said Schmalz with utter disregard to the truth and veracity of said reports"; that the copy of the report sent to the heir was "false and fraudulent" and that the accused

"sought to deceive" in sending her such purported copy and did so "for the purpose of falsely reporting to the beneficiary the true condition of the estate"; and that his claim that he paid $761.30 on the William Dale note "must be said to have been made &ast; &ast; &ast; as a deduction for the purpose of cheating the beneficiary, Jane Roberts".

■ In the light of all the circumstances we are compelled to say that these findings are supported by the evidence; that his plea that he was guilty only of "carelessness and ignorance", as he stated it in his testimony, cannot be sustained.

Schmalz testified that he was convinced he had paid the First National Bank of Ontario $250, but that it developed "that he had sent $250 over there while Mrs. Brown was still alive". He said that he got this information from an attorney in Ontario from whom he inquired after Mr. Williams had left his office and returned to Portland in November 1939. Since the estate was not in debt to the bank and the bank, of course, filed no claim, it is difficult to understand how Schmalz could have been convinced that he had ever paid the bank a cent out of estate funds. Assuming that he entertained such a belief, there is no explanation of his failure to pay the money to Williams immediately on learning that he had wrongfully taken credit for it. It was not for lack of funds, for, by his own testimony, he carried a bank balance during all this time which was never less than $6,000. His action in attempting to exact a release from Williams as a condition of payment is inconsistent with honesty and good faith, in view of the "gentlemen's agreement", as he termed it, with Williams that errors in the account which might subsequently come to light

would be corrected, and of his like assurance to the county judge.

It would be profitless either to attempt to state the effect of the petitioner's explanation regarding the false report sent to the heir or to quote his testimony *in extenso*. It is not merely unsatisfactory; it is unintelligible and well-nigh incoherent.

■ He seeks to cast the blame for the false accounting of payments on the Dale note on his stenographer, but he did not call her as a witness. At all events his testimony that he swore to and filed an accounting prepared by another and which he did not even examine would seem to be the measure of his conception of his duty as an executor and a member of the Bar. It harmonizes with his action in commingling moneys of the estate with his own moneys, a violation of a fundamental rule governing the conduct of trustees and of one of the canons of professional ethics in this state (Rule 9, Rules of Professional Conduct, Approved by Supreme Court, October 7, 1935).

■ The question of the petitioner's good intentions and his disclaimer of bad faith in the commission of admittedly wrongful acts as executor must be judged in the light of his whole course of conduct. Confronted with evidence of his delinquencies in the discharge of a trust, he trumped up large claims for services, obviously in order to make himself the creditor instead of the debtor, and then forced the heir, whose interests it had been his duty to protect, to incur the expense of litigation in order to recover a portion of her own property. This action cannot be explained or excused on the ground of carelessness; it refutes his repeated protestations of honest motives, and casts doubt upon the sincerity of his expressions of contrition.

■ The inevitable conclusion is that the petitioner was a faithless trustee. We have considered the plea for leniency on his behalf based on his good reputation and his impaired health. But our first duty is to the public and the legal profession; and sympathy for the man in the unfortunate position in which he now finds himself should not be permitted to dictate a judgment that might be taken as extenuation of a lawyer's gross misconduct in the handling of trust funds.

We concur in the recommendation of the Board of Governors of the Oregon State Bar, and an order will be entered permanently disbarring the petitioner, H. V. Schmalz, from the practice of law in this state.

RAND, J., did not participate in the consideration or decision of this case.