Submitted on petition for review April 28, petitioner disbarred
June 24, 1953

In re WILLIAM E. KOKEN

258 P. 2d 779

*Harlow F. Lenon,* of Portland, for Oregon State

*William E. Koken,* in his own person, petitioner.

ROSSMAN, J.

This matter is before us upon (1) a complaint filed against William E. Koken, the defendant, praying for the revocation of his license as an attorney; (2) the answer filed by the defendant; (3) the evidence introduced before the trial committee; (4) the decision and recommendations of the Board of Governors of the Oregon State Bar; and (5) a petition for a review by this court submitted by the defendant. See § 47-213, OCLA.

The defendant was admitted to the bar of the District of Columbia in January of 1934. In the early part of 1951 he sought admission to the bar of this state upon certificate from the District of Columbia. July 10, 1951, this court, acting pursuant to the provisions of Rule F of this court, granted the defendant a license authorizing him to practice law in Oregon for a period of two years. As Rule F provides, a temporary license may become a permanent one if the licensee continues to manifest good character and suitability for the practice of law. The rule says:

"* * * In the event that any objection is made to the final admission of any person so licensed to practice law in this state, such objection shall be made in writing, setting forth the grounds thereof, subscribed to and verified as a pleading as prescribed in Sec. 1-802, OCLA, and filed with the Clerk, who shall transmit a copy thereof to the applicant. The Court shall refer the matter to the Board of Governors of the Oregon State Bar to take testimony with respect to such objections and to report its findings and recommendations, and proceedings upon such reference shall conform sub-

stantially to those prescribed in Rule E. Upon final hearing the court may, in its discretion, either continue or revoke the temporary license, or permanently admit the applicant. * * *''

February 9, 1952, the Oregon State Bar filed a complaint against the defendant which presented five charges against him. Each of the five, succinctly stated, accused the defendant of having issued worthless checks. The first charge concerned a check in the amount of $75.00, and averred that the bank refused to make payment of it because ''there were not sufficient funds in said account therefor.'' The second charge concerned two checks, the payee in each instance being the same individual. The checks totaled $43.13. Payment of each was refused, so the complaint alleged, ''for the reason that there were not sufficient funds in said account therefor.'' The third cause was based upon two checks totaling $29.35 given to the same person. The complaint alleged that payment ''was refused for the reason that said account had theretofore been closed.'' The fourth charge concerned a check in the amount of $9.00 and alleged that payment was refused ''for the reason that said account had theretofore been closed.'' The fifth was based upon a check for $5.00 and claimed that payment was refused ''for the reason that said account had theretofore been closed.'' The answer filed by the defendant, in referring to the checks described in the complaint, admitted:

''The checks identified in paragraphs (c) to (g) inclusive, above, were drawn on the First National Bank of Portland, Oregon, in purported payment of an obligation of the accused to the payee thereof, and that upon presentment to the said bank for payment by the payee each of the said checks was returned by the said bank for the reason that there were not sufficient funds in the accused's

account or for the reason that the accused's account was closed."

The answer averred that each of the checks, after having been dishonored, was later paid.

The findings of the trial committee found that the accused was not guilty upon the first charge, that is, the one that concerned the check in the denomination of $75.00, but found him guilty of the other four charges. The committee recommended that the defendant be suspended from the practice of law for a period of three months. The Board of Governors, upon review, sustained the trial committee in its holding that the accused was not guilty of the charge contained in the first cause of complaint, but, like the trial committee, held that he was guilty of the other four charges.

We now quote from the Board's decision:

"The Board of Governors having considered the entire record, including the recommendations of the Trial Committee, thereupon rejected said recommendations, and upon motion duly made, seconded and carried by the affirmative vote of the eleven members then present and voting, makes the following decision and recommendations, to-wit:

"IT IS HEREBY ORDERED that the Board of Governors of the Oregon State Bar recommend to the Supreme Court of the State of Oregon that the temporary and conditional admission to practice of William E. Koken as a member of the Oregon State Bar, be forthwith revoked, and that the said William E. Koken be permanently disbarred; * * *."

The defendant's petition for review says:

"Petitioner respectfully requests that the decision and recommendation of the Board of Governors * * * be reviewed and rejected, or modified, for the reasons following, which raise questions of law only: * * *."

Thus we see that the accused does not claim that either the trial committee or the Board of Governors erred in resolving any fact issue.

■ The defendant's petition for review, after quoting § 47-213, OCLA, argues that the Board of Governors violated its demands and, seemingly, suggests that the Board's purported disregard of the provision exculpates him from the charges which the trial committee and the Board sustained. The section just mentioned reads:

"The board of governors may, by a two-thirds vote thereof, after a hearing for any of the causes set forth in the laws of the state of Oregon warranting disbarment or suspension, or for any breach of the rules of professional conduct, make an order recommending to the supreme court the disbarment of any member, or that such member be disciplined by reproval, public or private, or by suspension from practice. The board of governors shall keep a transcript of evidence and proceedings in all matters involving disbarment or suspension and may make findings of fact. In either case the said board shall render a written decision on said proceedings. Notice of the recommendation of said board of governors immediately shall be transmitted by registered mail to said member at his last-known post-office address and said board immediately shall file a certified copy of said recommendation, together with said transcript and findings, whenever findings have been made, with the clerk of the supreme court. * * *."

In advancing his contention that the Board violated § 47-213, the petition for review says:

"The first paragraph of the board's decision and recommendation states that the decision so to recommend was made by the board on July 25, 1952. It was filed with the Oregon State Bar on April 18, 1953. Notice of the board's action was received by

> petitioner via registered mail on April 21, 1953, and copy filed with the clerk of the court on April 27, 1953.''

It is in that way that the defendant claims that the Board disregarded the requirements of § 47-213.

We have given careful attention to the defendant's argument, but are aware of nothing which indicates that he was wronged or prejudiced by the Board's delay in taking the course required by § 47-213. It may be that he was kept in suspense and uncertainty, but his petition, while castigating the Board severely for what it terms ''inexcusable inaction and gross neglect of duty'', fails to mention any change in his life or course of conduct which would have occurred had the Board promptly announced its decision. The petition makes an intimation that the defendant has ''something which should be brought to the attention of the Court'' concerning the tardy announcement of the Board's decision, but tenders no affidavit indicating the nature of the ''something''. In a reply brief the defendant again takes the Board to task for its ''glaring failure to perform its duty'', but does not show that he was in any way wronged by the delay. The brief says:

> ''Respondent's observations that there has been no showing that petitioner was affected adversely in any way during the period of the delay can have no probative value. Understandably, the Bar's representative can not be expected to be aware of petitioner's personal situation and matters about which petitioner would testify if a hearing is granted. Petitioner represents that if called as a witness he would testify that the following facts are true:
>
> ''1. That petitioner was informally notified by telephone on July 28, 1952, of the board's decision, and that he could expect to receive written notice thereof in due course.

"2. That during the period August through December, 1952, petitioner made not less than 10 requests, both by personal visits and telephone calls to the offices of the State Bar in Portland, that the written notice be issued.

"3. That petitioner knows of his own knowledge that the rough draft of the document now before the Court existed at least 7 months before it was issued, and that in December, 1952, more than 5 months before issue, he was permitted to and did examine the said draft.

"4. That in April, 1953, petitioner finally (and for the first time) discussed the matter with the President of the board in Portland and requested him to cause the notice to be issued.

"5. That petitioner did not even remotely request or suggest that the notice be withheld.

"* * * As stated above, petitioner has known informally since July 28, 1952, of the severity of the board's decision. Respondent asserts again that to entitle petitioner to complain of the board's inaction 'he must show himself to be placed at a disadvantage because of such inaction'. This is indeed a strange and new theory of construing a law which directs that certain action shall ensue. This concept writes into the law provisions which are not there."

Thus the offer of proof, if accepted, would fail to indicate that the delay had prejudiced the defendant. It would, however, show that the defendant was promptly apprised that the Board's decision would consist of a recommendation to this court that his temporary license should be revoked and that he should be denied permanent admission to the bar of this state.

■ When the defendant learned of the Board's decision and discovered that entry of it had not been made in the records, he was not without remedy. We take the following from 49 CJS, Judgments, § 101:

"Where the cause has been heard and determ-

ined and the case is ripe for judgment, it is the duty of the court to render judgment, and performance of this duty may be compelled by mandamus * * *.''

See, also, 35 Am Jur, Mandamus, § 285, p 46.

Section 13-702, OCLA, in terms which are more rigorous than those of § 47-213, requires judges to pronounce their decisions within three months after submission of any issue. It provides that unless the judge acts within that period ''no officer shall sign or issue any warrant for the payment of the salary or any installment of the salary of any such judge'', and adds ''The provisions of this act shall be construed as mandatory and not directory.'' This court has held that the failure of a judge to comply with the demands of that statute does not invalidate the judgment or decree that the judge tardily enters. *Kellogg v. Kellogg*, 123 Or 639, 263 P 385. Although § 47-213, OCLA, renders it the duty of the Board to notify the defendant immediately of its decision, and to file with like dispatch the documents which that section of our laws designates, it does not ipso facto render invalid orders to which the required attention are not given immediately. The validity of the Board's action is not determined by the element of timeliness alone. We fail to find any merit in the defendant's contention.

The defendant, referring to the recommendations made by the Board of Governors that his temporary license be revoked and that permanent admission be denied him, employs the terms ''arbitrary and unreasonable''. It will be recalled that the trial committee suggested suspension for three months. The defendant offers no criticism of that suggestion. To the contrary, his brief says:

''The record shows that a prompt, full, fair and

impartial trial was had, and that said trial was conducted on a high plane in all respects. * * *

"As stated, petitioner's private conduct several years ago was censurable, but not to the unduly harsh extent recommended by the board. Petitioner's errors are regrettable and have caused petitioner much shame and humiliation."

The quoted words, "several years ago" evidently should have been "several months ago".

We have read carefully the transcript of evidence and have given attentive consideration to every matter submitted by the defendant in his behalf. He is 46 years of age, is married and the marriage has brought forth three children. For many years the defendant was in the employ of federal agencies as an attorney. Before coming to Portland he served the agencies in the trial of tax cases. A member of the Portland bar, who observed his work and who for six months gave him employment, described the defendant as a capable attorney.

Although the defendant's home was not visited by illness or other adversity, and he had had the benefit for many years of a good salary, yet he issued not only the worthless checks which are mentioned in the complaint, but such a large quantity of them that he himself used this phrase, "this avalanche of checks". He began that practice after he came to this state. Adding to the seriousness of his conduct, which, of course, consisted of a violation of our penal code by a man who was learned in the law, was the fact that he continued to issue checks against bank accounts that had been closed. His conduct was pursued even after the district attorney for Multnomah county sent him a letter concerning one of his checks. Eventually his conduct culminated in his arrest, accompanied by newspaper

publicity upon which the defendant dwelled while testifying. According to him, the newspaper articles mentioned twenty of his worthless checks. The record indicates that the actual number was more than twice that number. Upon his arrest, the member of the bar to whom we have referred generously contributed sufficient money to discharge all of the checks to which the defendant called his attention. We observed while reading that attorney's testimony that he manifested astonishment when he learned that, in addition to the checks which he had discharged, there were many others.

The defendant, in response to questions submitted to him by members of the trial committee, attributed his dishonorable course of conduct in part to recent addiction to alcohol. However, we observe that when he was further questioned he claimed that his checks "were written during a period of stress, drinking and carelessness". He did not elucidate his use of the word "stress". He swore, however, that he had discontinued his use of liquor, and we accept his statement as true.

Another member of the bar who gave the defendant employment, but who later terminated the relationship when he became dissatisfied with the quality of the defendant's work and with the nature of his conduct, termed the defendant "unreliable". When a member of the trial committee asked the attorney to explain why he deemed the defendant unreliable, the witness related several incidents which, we believe, warranted his use of that term. That member of the bar, before accepting the defendant into his employ, discharged several of the defendant's worthless checks and demanded a promise that the practice would not be repeated. The promise was not kept.

By reverting to the facts which we have mentioned, it will be seen that although the defendant was not granted his temporary license until July 10, 1951, the charge against him was filed February 9, 1952. Thus, within seven months after his temporary admission to our bar, the five-pronged charge came forth. In fact, according to the defendant's voluntary admissions, he began to write worthless checks before this court granted him his temporary license. Obviously, had we known of that fact, his application would have been rejected.

We shall review the record no further. We do not think that the defendant gave a satisfactory explanation for his long continued opprobrious course. It will be recalled from words which we quoted from his pen that he says his conduct brought him "shame and humiliation". From his testimony it appears that his execrable behavior brought distress to his family, including forcible eviction from their home. It is certain that his unbelievable resort to worthless paper has sullied the good name of the profession.

Although it is always a disagreeable task for members of the bench to revoke the license of a fellow member of the profession, this defendant has given us no choice but to embrace the Board's recommendations. We repeat, he has given no satisfactory explanation for his long-continued defiance of the law. His attitude toward the members of the Board, all of whom serve without compensation and at the sacrifice of their own interests, manifests defiance and censure.

This court adopts the recommendations of the Board of Governors. An order will issue in harmony therewith. The defendant's temporary license is canceled forthwith and permanent admission to the bar of this state is denied him.