Argued September 3, petition denied September 24, 1958

IN THE MATTER OF THE APPLICATION OF KOKEN
329 P. 2d 894

*Gunther F. Krause*, Portland, argued the cause and filed a brief for petitioner.

*Arno H. Denecke*, Portland, argued the cause and filed a brief for Oregon State Bar.

O'CONNELL, J.

This matter is before us on a petition for a review of the decision of the Board of Governors of the Oregon State Bar denying the petitioner's application for reinstatement of a temporary license to practice law in Oregon which was canceled by this court on June 24, 1953. The opinion of this court in the proceeding which culminated in the cancellation of the petitioner's temporary license is reported in *In re William E. Koken*, 198 Or 659, 258 P2d 779 (1953). The facts relevant to the disciplinary action taken in that case are fully set forth in that opinion. They may be summarized as follows: On July 10, 1951 the petitioner, a member of the Bar of the District of Columbia, was granted a temporary license to practice law in the state of Oregon for a period of two years. This action was taken pursuant to Rule F of the Rules For Admission of Attorneys in Oregon. Under that rule the applicant may be granted a permanent license after the expiration of the two-year period if it is established that he has not been guilty of unprofessional conduct. On January 9, 1952 the Oregon State Bar filed a complaint against the petitioner, charging him with issuing a number of worthless checks. The petitioner was found guilty of these charges by the trial committee of the Bar, by the Board of Governors, and by this court. The petitioner's temporary license was canceled and permanent admission to the Bar of this state was denied him. On October 4, 1957 petitioner filed a petition with the Board of Governors for reinstatement of the temporary license which had been canceled. The petition was denied on January 24, 1958 and on February 7, 1958 a petition to review the Board's action was filed in this court. Petitioner prays that the decision of the Board of Governors be set aside, that his tempo-

rary license be immediately reinstated, or if immediate reinstatement is not deemed proper, that he be granted leave to take the Bar examination for admission to practice law in Oregon.

The petitioner claims that he has rehabilitated himself and that he is now a fit person to practice law in this state. In support of this claim he points out that the conditions which gave rise to the misconduct resulting in his disbarment no longer exist. He states that during the period that he was issuing worthless checks he was addicted to the use of alcohol but that he no longer uses intoxicating beverages except that occasionally he drinks a glass of beer in his home. He pledges that the excessive use of alcohol will not reoccur.

When he was before the trial committee of the Bar in April of 1952 he explained his misconduct by pointing out that it occurred "during a period of stress, drinking and carelessness." Since his disbarment he has been engaged in a variety of activities, including work as a longshoreman, selling automobiles, and the preparation of income tax returns for others. Through affidavits and responses to questionnaires a number of persons have attested to his good moral character and to his exemplary conduct since his disbarment. A real estate broker and an accountant with whom he has been associated testified to his industry, sobriety, trustworthiness and good moral character generally. There are also supporting affidavits of other persons, including three members of the Oregon State Bar, one of whom was the prosecutor in the initial proceeding before the trial committee. Five reputable persons who answered the Board of Governor's questionnaire stated that they considered him to be a man of good character. Petitioner points to his record as an attorney for a period of approximately 20 years, which he contends

is unblemished but for the brief interlude of misconduct for which he was disbarred. The foregoing represents the substance of the petitioner's contention. The Board of Governors concluded that

"The applicant, William E. Koken, has not proved by any satisfactory evidence or by any affirmative showing to the satisfaction of the Board of Governors, and it does not appear to the Board of Governors, that he is a person of good moral character, or that he has the moral qualifications requisite to accept the obligations and perform the duties of an attorney in the State of Oregon, or that his reinstatement or admission will not be detrimental to the integrity and standing of the bar and the administration of justice, nor subversive to the public interest."

■ The petitioner argues that if the evidence submitted in this case is not good enough to establish rehabilitation, then rehabilitation can never be proved in any case. He asserts that "good moral character can only be defined as absence of proven conduct or acts which have been historically considered as manifestations of moral turpitude." But we thing that it is our duty to apply a stricter test of rehabilitation. It is possible that if we were to restore the petitioner to his former position in this bar he would never again violate his public trust, but we would not discharge our obligation to the community if we should rest our decision in this case upon that conjecture. We are entitled to have a reasonable assurance that the misconduct which brought the petitioner before this court once before will not reoccur. We recognize that disbarment does not preclude reinstatement, but we believe that reinstatement should be allowed only in very exceptional cases. We endorse the thought expressed in Drinker on Legal Ethics (1953) at page 49, as follows:

"* * * While it is, of course, always possible

that a disbarred lawyer may be reinstated, this, it is believed, should almost never occur except where the court concludes that the disbarment was erroneous. For a lawyer who has been found guilty of an act warranting disbarment to be reinstated justly creates an impression on the public which is very bad for the reputation of the bar, the conclusion being that this is because of friendship, pity, or political influence; which is not infrequently the case. * * *"

■■ It has been recognized that stronger proof of good character is required to restore a disbarred lawyer than that required upon his admission to the Bar. *In re Petition of Morrison*, 45 SD 123, 186 NW 556 (1922); *Kepler v. State Bar of California*, 216 Cal 52, 13 P2d 509 (1932). But whether we treat the petitioner's case as one of reinstatement or one of admission, our duty is essentially the same, i.e., to protect the public and the other members of the legal profession. *In re Schmalz*, 169 Or 518, 129 P2d 825 (1942); *In re Moynihan*, 166 Or 200, 111 P2d 96 (1941); *In re Weinstein*, 150 Or 1, 42 P2d 744 (1935); *Ex parte Finn*, 32 Or 519, 52 P 756 (1898); *Feinstein v. State Bar of California*, 39 Cal2d 541, 248 P2d 3 (1952); *People ex rel Chicago Bar Association v. Goodman*, 366 Ill 346, 8 NE2d 941.

■ It is not enough to say that a petitioner has been sufficiently punished. Our concern is not with the punishment of the petitioner. We must determine whether the public and the Bar will be served if he is permitted to practice law. We do not feel that we would discharge our public duty if we should permit the petitioner to practice law in this state at the present time.

During a considerable part of the petitioner's professional life he has been in financial difficulty. The

pressure of financial need caused him to violate the law which eventually resulted in his disbarment. He is still in financial trouble. His application for permission to take the Bar examination and for admission to practice law reveal that as late as December 3, 1957 he was not meeting his financial obligations. In answer to one of the questions in the application form he confesses that he was discharged in bankruptcy in April 1953; that in 1955 a judgment in favor of a loan company was obtained against him, and that in 1957 judgments were obtained against him by a credit bureau and a credit agency. There is danger that this continuing pressure of financial need may again lead the petitioner to violate the law and his professional trust. He solemnly pledges that he will not succumb to this temptation, but under the circumstances we are of the opinion that we should not impose upon the public the risk that he may violate this pledge. As stated in *Petition of Morganstern*, 85 Cal App 113, 259 P 90, 92 (1927) "it would be unfair to the public interest to order a readmission except upon a feeling, bordering upon conviction, that he has forever put under foot the temptations of the past." We do not have that "feeling, bordering upon conviction" in this case. Contributing to our doubt is the knowledge that once before petitioner proved himself unworthy of belief. As indicated in *In re William E. Koken*, supra, at page 668, a member of the Oregon Bar, before employing the petitioner, obtained his promise that he would not again issue worthless checks. The promise was violated. There is danger that the promise he now makes to the Bar as a whole, and to the public, will also be violated. As long as that danger exists, the petitioner is not entitled to practice law in this state. Petition denied.