Argued June 3, disbarred October 23, petition for rehearing
denied; former opinion modified December 31, 1968

IN RE COMPLAINT AS TO THE CONDUCT OF
## WARNER W. GREGG, ACCUSED.
446 P. 2d 123
448 P. 2d 547

*Berkeley Lent*, Portland, argued the cause and filed briefs for accused.

Herbert H. Anderson and Roland F. Banks, Jr., Portland, filed a brief for Oregon State Bar.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

## PER CURIAM.

The accused lawyer was found guilty of the following charges: failure to prosecute a client's cause diligently, resulting in a dismissal of the cause; misappro-

priation of approximately $2,000 in funds of an organization of which he was treasurer; and dilatory conduct in performing as an attorney for an estate.

The accused does not dispute committing these acts. The accused contends and the trial committee found that the culpable conduct of the accused was caused by alcohol addiction and that this is an important mitigating factor. The Board of Governors of the bar did not consider this circumstance as mitigating the charge of wilfully misappropriating funds. The board, by a vote of 11 to one, recommended permanent disbarment. One board member recommended suspension from practice for five years and until such time as the accused shall be found fit to practice. The trial committee had recommended a suspension for two years, but only if the accused failed to totally abstain from alcohol for five years.

The record contains no instances of any charges of unethical and illegal conduct against the accused other than in this instance. The accused is at present a Lieutenant Commander in the United States Coast Guard Reserve. His superior has retained the accused in his position after he learned of accused's defalcation.

The accused is in his late thirties. He was admitted to the bar in 1958, and was in private practice in Portland with a small firm for five years. In 1963 he joined the legal staff of a state agency where he is now employed in Portland. In 1962 his drinking substantially increased, and beginning in 1963 he had periods of alcoholic amnesia, and, on occasion, was absent from his home and office for several days at a time.

During this time the accused, although not in a legal capacity, was treasurer of a university alumni

association fund. Between November 1964 and April 1965 he cashed 13 checks upon this fund and appropriated the money, a total of about $2,000, to his own use, apparently for the purchase of alcohol. After the association asked him for an explanation the accused made full restitution between September and December 1965.

The testimony of the accused was that he did not remember drawing or cashing any of the checks. He stated that when he was first questioned about the account being overdrawn he thought he had not made some deposits. When he was shown the checks he admitted he had defaulted, but said he did not previously know he had cashed them. He admitted an allegation made in the complaint that "the financial statement previously prepared by the Accused indicated that there were several hundred dollars in the bank account."

Early in 1965 the accused consulted a psychiatrist about his drinking problem, but the consultations were unsuccessful in changing his drinking habits. In July 1965 the accused went to a hospital specializing in the treatment of alcohol addiction. He took the prescribed treatment which includes about 10 days of hospitalization followed by periodic "reinforcement" treatments, the last one being in August 1966. He testified he has had nothing to drink since he entered the hospital and there is no evidence indicating the contrary.

The medical director of the hospital, a recognized authority on alcohol addiction, testified that the accused was what he termed a "primary alcoholic," meaning a person who has a normal, well integrated personality but who through years of social drinking has developed an addiction. He stated that such an addict has a tissue demand for alcohol. The witness dis-

tinguished such an addict from one who has a deep-seated personality problem and uses alcohol as an escape.

The medical director also testified that there is no permanent cure for such addiction since an addict who has been treated and has abstained for years, can take one drink and become addicted again.

The bar's position is that there was no testimony as to whether the accused was drunk or sober when the checks were cashed, and that without such evidence they could not conclude that the accused was mentally incompetent during all the times he committed the defalcations. As stated, the accused testified he did not remember cashing any of the checks.

We conclude from the evidence that the accused committed the defalcations because of his addiction to alcohol. However, he knew what he was doing when he cashed at least some of the checks and before the association officials questioned him he was aware that he had committed defalcations.

The troublesome question is what form of discipline the public interest requires for a lawyer who admittedly stole $2,000 and whose conduct apparently was caused by alcohol addiction which he has at least for two years overcome.

■ We conclude the public interest requires that we adhere to our past principle requiring disbarment of attorneys guilty of embezzlement and order the accused disbarred. *In re O. H. Bengtson,* 230 Or 369, 371, 370 P2d 239 (1962).

It is true that the accused's conduct was caused by alcohol; however, most embezzlements are caused by pressures of some sort which the embezzler is unable to withstand. The bar and the court owe the public

the obligation of keeping out of the practice of law those who cannot withstand these pressures.

Disbarred.

### ON PETITION FOR REHEARING

The Supreme Court, 252 Or 174, 446 P2d 123, rendered judgment and a petition for rehearing was filed. The Supreme Court held that in view of extenuating circumstances, suspension was appropriate discipline for misappropriation.

Petition denied and former opinion modified.

**Attorney and client—Discipline—Suspension or disbarment**

2. If it appears likely that a disciplined attorney may become rehabilitated within a few years and, therefore, should be permitted to resume practice of law, suspension and not disbarment is appropriate discipline.

**Attorney and client—Reinstatement after disbarment**

3. Generally, reinstatement of attorney after disbarment should almost never occur.

**Attorney and client—Disbarment**

4. Disbarment of attorney is proper discipline in instances of planned, rational defalcations where odds against true rehabilitation are so great that likelihood of reinstatement is minimal.

**Attorney and client—Suspension for misappropriation**

5. In view of extenuating circumstances, suspension was appropriate discipline for misappropriation.

---

See reinstatement of disbarred attorney.
7 Am Jur 2d, Attorneys at Law § 70.
70 ALR2d 268.
CJS, Attorney and Client § 38.

In Banc

Review of recommendation of Board of Governors of Oregon State Bar.

Berkeley Lent, Portland, for the petition.

PETITION DENIED; FORMER OPINION MODIFIED.

PER CURIAM.

The accused was disbarred and has filed a petition for rehearing. We have re-examined our disciplinary policy in the context of these proceedings and determined that the form of discipline ordered was inappropriate.

We adhere to the statements made in our former opinion regarding the culpability of the petitioner. It is the order of disbarment as discipline for these acts which has caused our reconsideration.

We did state in *In re O. H. Bengtson,* 230 Or 369, 371, 370 P2d 239 (1962), that our policy was to order disbarment of attorneys who took the money of others. However, subsequently, in *In re James H. Lewelling,* 244 Or 282, 417 P2d 1019 (1966), and *In re Sundstrom,* 250 Or 404, 442 P2d 604 (1968), in which the accuseds took clients' funds, the discipline ordered was suspension rather than disbarment. In neither of the latter cases were the defalcations as calculated and inexcusable as those in the *Bengtson* case.

In the *Lewelling* and *Sundstrom* cases we recognized that if the accused was rehabilitated from whatever condition brought on his culpable conduct the public would not be harmed by permitting him to again practice law. If the public would not be harmed by an accused resuming the practice of law he should be permitted to resume practice. The discipline of members of the bar is for the protection of the public, not solely for the punishment of culpable attorneys.

■ If it appears likely that a disciplined attorney may become rehabilitated within a few years and, therefore, should be permitted to resume the practice of law, suspension and not disbarment is the appropriate discipline.

■ We have generally accepted the policy that reinstatement after disbarment should almost never occur.

"\* \* \* We recognize that disbarment does not preclude reinstatement, but we believe that reinstatement should be allowed only in very exceptional cases. We endorse the thought expressed in Drinker on Legal Ethics (1953) at page 49, as follows:

" '\* \* \* While it is, of course, always possible that a disbarred lawyer may be reinstated, this, it is believed, should almost never occur except where the court concludes that the disbarment was erroneous. For a lawyer who has been found guilty of an act warranting disbarment to be reinstated justly creates an impression on the public which is very bad for the reputation of the bar, the conclusion being that this is because of friendship, pity, or political influence; which is not infrequently the case. \* \* \*.' " *In re Koken*, 214 Or 357, 360-361, 329 P2d 894 (1958).

The authority on legal ethics, Henry S. Drinker, stated:

"Ordinarily the occasion for disbarment should be the demonstration, by a continued course of conduct, of an attitude wholly inconsistent with the recognition of proper professional standards. Unless it is clear that the lawyer will never be one who should be at the bar, suspension is preferable. For isolated acts, censure, private or public, is more appropriate. Only where a single offense is of so grave a nature as to be impossible to a respectable lawyer, such as deliberate embezzlement, bribery of a juror or court official, or the like, should suspension or disbarment be imposed. Even here the lawyer should be given the benefit of every doubt, particularly where he has a professional record and reputation free from offenses like that charged. Similarly, such extreme measures should be in-

voked only in case of fairly recent offenses, proof in refutation of which would be reasonably available to respondent, except, of course, in cases where he was shown to have actively concealed them. Just as a lawyer who has been habitually dishonest will almost certainly revert to his low professional standards when necessity, temptation, and occasion recur, so one has been consistently straight and upright can properly be trusted not to repeat an isolated offense unless of such a nature as of itself to demonstrate a basically depraved character." Drinker, Legal Ethics, 46-47 (1953).

■ We are not changing our policy that disbarment is the proper discipline in instances of planned, rational defalcations where the odds against true rehabilitation are so great that the likelihood of reinstatement is minimal.

■ In the instant case the accused has not been drinking for about two and one-half years and the evidence indicates that the chances are good that he will continue to abstain. On the other hand, the medical testimony was that if the accused had a drink or two tomorrow he would be back in the same pattern that caused his trouble. We believe that a sufficient time should elapse during which it can be learned whether the accused can continue to abstain.

For these reasons the judgment of disbarment is withdrawn and the order of this court is that the accused is suspended from the practice of law for a period of three years and thereafter until he shall affirmatively show that he is in all respects again able and qualified to resume his position as a member of the bar of this state and that his resumption of the practice of law will not be detrimental to the bar or to the public interest.

Petition denied; former opinion modified.