Argued May 8, disbarred July 29, petition for rehearing denied September 29, 1970

IN RE COMPLAINT AS TO THE CONDUCT OF
## LEONARD D. ALLEY, ACCUSED.
472 P2d 800

*Leonard D. Alley*, Portland, argued the cause and filed a brief in propria persona.

*Edward L. Clark, Jr.*, Salem, argued the cause for Oregon State Bar. With him on the brief was Robert V. McConville, Salem.

Before MCALLISTER, Presiding Justice, and SLOAN, O'CONNELL, DENECKE, HOLMAN, TONGUE* and HOWELL, Justices.

PER CURIAM.

The Board of Governors of the Oregon State Bar has found the accused member of the bar to be guilty

---

\* Tongue, J., did not participate in this decision.

of unethical and unlawful conduct and has recommended to this court that he be disbarred.

The accused is charged by the bar with commingling moneys from two estates with his own personal funds, using such moneys for his personal affairs, giving false answers to the bar grievance committee investigating his conduct, and making misrepresentations to the heirs in one estate and his co-executor in another. The trial committee and the Board of Governors found the bar had proved all of these charges. This court likewise finds the charges proved.

We do not find it necessary or desirable to review in great detail the evidence proving the guilt of this longtime member of the bar.

In early July 1966 the accused, as attorney for the Dietz estate, received $8,000, the proceeds of a sale of real property belonging to the estate. On July 12, 1966, he deposited this amount in his and his wife's checking account. On July 27, 1966, he paid $2,200 to an heir of the Dietz estate by a check on this account. Upon subsequent inquiries from the other Dietz heirs, he stated he could not pay out the balance because a title company was asserting as a lien a judgment against the buyer of the land which had been sold by the estate. At the trial he could not remember the name of the title company nor had he any other evidence substantiating this alleged claim of lien. He admitted there could be no lien upon the proceeds of the sale.

After the accused deposited the money from the Dietz estate in his personal checking account the balance in this account on occasion was less than $100.

On December 14, 1968, the deposition of the ac-

cused was taken by the bar as part of the investigation of the complaint made against accused. On December 13, 1968, the accused and his co-executor of the Loosley estate withdrew $8,900 from an account belonging to that estate. The co-executor testified the accused asked him to sign the withdrawal slip, which he did after being told by the accused that the money was going to be deposited in the bank which was to be trustee of the estate. The accused set up a client's trust fund account on December 13, 1968, and deposited the amount of this withdrawal in the trust account. At the deposition on December 14, 1968, he produced a certificate showing that he had $8,000 in his trust account and stated that the next day he was sending the Dietz heirs the entire amount owed them, which he did.

At his deposition the accused was asked: "When that transmission is made to Dietz, will that create any shortage in any other client's account?" He answered: "No, it will not."

By February 1969 the balance in the trust account was $10. The largest charges by the bank against the account were because of Internal Revenue Service levies on the account for taxes the accused denies lawfully owing.

The hearing before the trial committee of the bar commenced on April 15, 1969. When asked at the hearing where the assets of the Loosley estate were now, the accused answered, in part: "And then I hold for distribution a time certificate of deposit available to and pledged for this amount that was in this account from the Loosley estate, in the round sum of $9,000, because there will probably be some interest accruing."

The evidence was then developed that on the day before the hearing the accused went to a bank and

borrowed $9,000. The accused gave a note for such amount and received a time certificate of deposit for $9,000, which the bank required him to assign to the bank as collateral for the loan. The accused admitted that if he did not pay the loan, there were no funds available from this source to reimburse the Loosley estate.

The accused insisted he had securities which could be liquidated to reimburse the Loosley estate. He said he had not done this so far because of the inclement weather.

A representative of the bank testified the accused had another loan with the bank. The witness's recollection was that the balance on the loan was $5,000 and the collateral securing it had a value of $9,000 or $10,000. The accused stated that in January the securities posted as collateral had a value of about $15,000, the loan had a balance of approximately $4,000, and he had called the bank that morning to liquidate the securities and pay the loan and turn over the balance to the accused. The bar asked the accused and his counsel if they were calling anyone from the bank to verify these statements. They replied they were not.

The defalcations were, in effect, admitted. The accused's statements that he intended ultimately to pay the sums back do not excuse the accused. The accused stated that his incorrect statements made under oath were mistakes of memory or understanding. If this were true we would doubt the competency of the accused to practice law.

The trial committee and seven members of the Board of Governors recommend disbarment. The other three governors voting recommend five years' suspension from practice.

In *In re Warner W. Gregg*, 252 Or 174, 179, 446 P2d 123, 448 P2d 547 (1968), we reviewed our decision concerning the appropriate discipline for attorneys who have used their clients' funds. We noted that in *In re O. H. Bengston*, 230 Or 369, 370 P2d 239 (1962), we stated that our policy was to disbar attorneys who take money of others. We also noted that where the use of clients' moneys came about because of an alcohol problem which appeared to be cured or from causes other than a calculated scheme, suspension rather than disbarment may be more appropriate. In the instant case the accused's actions must be characterized as calculated and of the kind that we have the greatest duty to protect the public against. We, therefore, hold that the accused is disbarred from the practice of law.