Argued and submitted May 6, accused suspended for 63 days and placed on probation for three years September 3, 1986

In re Complaint as to the Conduct of
ROGER C. GERMUNDSON,
*Accused.*

(OSB 83-123; SC S32175)

724 P2d 793

Larry Dawson, Portland, argued the cause and filed the brief for the accused.

George A. Riemer, Portland, argued the cause for Oregon State Bar. With him on the brief were Helen T. Smith, Portland.

PER CURIAM

## PER CURIAM

The Oregon State Bar charges Roger C. Germundson, a member of the bar, with violations of several disciplinary rules relating to a client and later to the client's estate. The charges concern conflicts of interest in borrowing money from the client and conduct involving misrepresentation in executing notes for those debts in the name of certain businesses without authority to do so. The accused pleads alcoholism in mitigation.

We summarize the course of events, which is largely undisputed, from the findings of the trial panel appointed by the Disciplinary Board.

The accused represented Cleveland Leis, an aged and disabled patient at a nursing home, from 1972 to Leis's death in 1983. The accused became Leis's friend and confidant and looked after Leis's financial affairs under a power of attorney. During the years from 1974 to 1980, the accused obtained numerous loans from Leis to himself or to businesses in which the accused had an interest, totaling approximately $44,000. The loans were made at prevailing interest rates, but no promissory notes or other written evidence of the loans were prepared other than the canceled checks drawn by the accused on Leis's bank account. Not more than one interest payment and no repayments of principal were made before Leis's death.

On June 10, 1983, after Leis's death, the accused filed a petition for probate of Leis's will, stating that the assets of the estate consisted of $2,000 in money and $55,000 in receivables, and for appointment of the accused as personal representative of the estate. An order to this effect was signed on June 13, 1983. After a conversation with his own lawyer, the accused realized that he had a conflict of interest as a debtor of the estate and resigned as personal representative, arranging to have another lawyer, Garth Ledwidge, appointed as his successor in September 1983.

In an inventory of the estate filed in January 1984, Ledwidge referred to three promissory notes payable, respectively, by the accused, Roger Germundson, and by two businesses in which Germundson had an interest. Germundson signed three demand notes for himself, for Master Muffler,

Inc., and for 3-Spot Enterprises (a partnership) to St. Timothy Lutheran Church and Good Shepherd Lutheran Home of the West, devisees of Cleveland Leis, on June 1, 1984. Because of a dispute between the owners of Master Muffler, Inc., the accused was only a shareholder and not authorized to act as an officer of the corporation when he signed the notes. The accused later told an attorney for St. Timothy and Good Shepherd that some of the checks he wrote for supposed loans from Leis to 3-Spot Enterprises in fact were for his personal use, and he so testified to the trial panel. The accused eventually settled the claims of the two devisees for approximately $55,000.

■       The Bar's complaint charged, and the trial panel found, violations of DR 5-101(A), DR 5-104(A), and DR 1-102(A)(3) (*former* DR 1-102(A)(4)). As we often have occasion to remind counsel in oral argument, and not uniquely in disciplinary cases, the briefs do not comply with ORAP 7.24, which requires statutes and other regulatory texts to be set out verbatim.[1] Earlier opinions have noted this repeated failing, *see, e.g., State v. Langan,* 301 Or 1, 3 n 1, 718 P2d 719 (1986); *Davis v. Tyee Industries, Inc.,* 58 Or App 292, 300, 648 P2d 388 (1982). Quotation of statutory words relevant to an issue is not only a convenience for the court. Rule 7.24 is intended to cause counsel to examine the current text of a statute or other provision, including possible recent amendments, before arguing from judicial decisions under the statute or from some general paraphrase of it. Compliance with the rule is not optional.

DR 5-101(A) provides:

"Except with the consent of the lawyer's client after full disclosure, a lawyer shall not accept employment if the exercise of the lawyer's professional judgment on behalf of the lawyer's client will be or reasonably may be affected by the lawyer's own financial, business, property, or personal interests. Full disclosure shall include the recommendation that

---

[1] ORAP 7.24 provides:

"If an appeal involves an ordinance, charter, statute, constitutional provision, regulation or administrative rule, so much of the provision as relevant shall be set forth verbatim with proper citation. If lengthy, such matter should be appended or footnoted and need not be set out verbatim if it appears in another brief in the case and is cross-referenced appropriately."

the client seek independent legal advice concerning the continued representation by the lawyer."

DR 5-104(A) provides:

"A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise the lawyer's professional judgment therein for the protection of the client, unless the client has consented after full disclosure. Full disclosure shall include a recommendation that the client seek independent legal advice."

These disciplinary rules differ in that DR 5-101(A) assumes a preexisting interest and precludes the lawyer from accepting professional employment "[e]xcept with the consent of the lawyer's client after full disclosure," including "the recommendation that the client seek independent legal advice," while DR 5-104(A) assumes an existing professional relationship between the lawyer and the client and precludes the lawyer from entering a business transaction with a client "if they have differing interests therein and if the client expects the lawyer to exercise the lawyer's professional judgment therein for the protection of the client," again subject to the client's consent after full disclosure by the lawyer, including a recommendation that the client obtain independent legal advice. The lawyer's duty to disclose fully and to recommend independent legal advice is common to both situations, acceptance of employment when the lawyer's professional judgment for the client is threatened by self-interest, DR 5-101(A), and entering a business transaction with a client if they have differing interests therein, DR 5-104(A).

■      In the present case, Germundson's professional relationship with Leis preceded any reason to believe that his judgment would be affected by his personal business interests. It is unquestioned that after becoming Leis's lawyer, Germundson entered into business transactions with Leis in which they had differing interests when he borrowed substantial sums of money from Leis. It also is unquestioned that after he began to borrow money from Leis, Germundson continued to undertake new professional tasks for him, which included preparing a will and collecting and paying Leis's monthly checks. We agree with the Bar (the trial panel failed to make express findings on this point) that the accused's

personal position as his client's debtor reasonably might be expected to affect his professional judgment in handling the client's financial affairs. Both under DR 5-101(A) and DR 5-104(A), therefore, the propriety of the accused's conduct depends on whether he obtained the client's consent after full disclosure, including the recommendation that the client seek independent legal advice.

■     Germundson testified that Leis urged him to accept Leis's offers to lend him money, and that Germundson repeatedly recommended that Leis consult independent counsel concerning these loans, but that Leis emphatically rejected this. No one else was present at the business discussions during Germundson's frequent visits to Leis's room in the nursing home, and nothing of what was discussed or agreed between them was committed to paper. We previously have said that a lawyer who wants to show compliance with the disclosure requirements of the disciplinary rules preferably should state the disclosures in writing. *In re Drake,* 292 Or 704, 714, 642 P2d 296 (1982). This applies not only to the existence of the lawyer's interest but the nature of the conflict, the risks to the client, and the reasons for consulting independent counsel. But the rules do not now mandate such written disclosures, and we cannot find by clear and convincing evidence that the accused did not urge Leis to seek independent legal advice.

■     Assuming he did so, however, Germundson's own testimony does not demonstrate adequate disclosure apart from recommending independent advice. He did not spell out the financial conditions of the businesses in which he was engaged or the extent of his own exposure to personal or business obligations besides the unsecured loans from Leis. Germundson and Leis were friends, and we recognize that one friend may prefer to show his trust in the other and may resist and resent the other's insistence on explaining details of his financial position and business arrangements that the lender does not want to hear. This attitude is even more likely toward a friend who also is the lawyer whom one has entrusted with one's affairs. That is the more reason why lawyers in particular must take care to make the same kind of "full disclosure" to a client or potential client as they would seek on behalf of that client in a similar transaction with a third party. By failing to do so, the accused's conduct fell short of compliance

with DR 5-101(A) and DR 5-104(A).

We deal separately with the accused's conduct after Leis's death. The Bar charges that the accused violated DR 5-101(A) by undertaking to represent Leis's estate when he owed the estate $60,000 that he had borrowed from Leis. The accused testified that he filed the petition for probate and appointment of himself as personal representative because he believed this should be done in a timely fashion and that, upon being reminded of his conflict of interest, he at once secured a substitute representative and lawyer for the estate. This, of course, says nothing about what he would have done if no one had pointed out the conflict. Crediting the accused, who long had done no probate work, with correcting what he says was done by mistake, it nonetheless was a violation of DR 5-101(A).

The Bar also charges, and the trial panel found, that the accused violated DR 1-102(A)(3) (*former* DR 1-102(A)(4)) in executing a promissory note as a representative of Master Muffler, Inc., when he knew that he had no authority to act on behalf of that corporation. DR 1-102(A)(3) (*former* DR 1-102(A)(4)) provides:

> DR 1-102 "Misconduct; Responsibility for Acts of Others.
>
> "(A) It is professional misconduct for a lawyer to:
>
> "* * * * *
>
> "(3) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
>
> "* * * * *."

The accused testified that he meant only to disguise his personal borrowing from his wife and regarded the note as his personal obligation rather than that of the corporation. Nonetheless, he exposed the corporation to potential liability or at least legal expenses if the holders of the note sought to collect from the corporation. We agree that the accused violated *former* DR 1-102(A)(4) (now DR 1-102(A)(3)).

Finally, we turn to the disposition of this case. The trial panel initially recommended that the accused be suspended from the practice of law for one year and, as a condition of his readmission, that he be required to pay his debt to the devisees of the Leis estate. Thereafter, the accused

requested, and the panel conducted, a mitigation hearing under BR 5.7 (Oregon Bar Rules of Procedure) at which the accused introduced evidence that he was an alcoholic and drinking heavily at least since 1973, that he had overcome his drinking habit and remained sober since March 1982, and that since that time he had actively participated in alcohol rehabilitation programs. The trial panel concluded that the accused's "capacity to appreciate the wrongfulness of his conduct was affected by his alcoholism" during the period of the loans from Leis, but that alcoholism did not contribute to the violations with respect to probate and the promissory notes falsely attributed to the corporation, which occurred after the accused had stopped drinking alcohol. The panel reduced the suspension to 30 days followed by two years' probation conditioned on the accused's continuing his alcohol recovery program under the supervision of Mr. Don Muccigrosso of what the panel called the "Impaired Lawyer Program." The panel dropped the requirement of paying the promissory notes of June 1984, which was an issue in ongoing litigation.

■     Abuse of alcohol or other mind-altering substances is a common factor in professional misconduct, as it is in criminal and civil cases. In disciplinary cases, we distinguish its role in assessing culpability from its significance in determining what is required to protect the public against future misconduct. Culpability under the disciplinary rules requires different mental elements, which may range from intent through knowledge and negligence to strict liability, and it is possible that a lawyer's innocent dependency on some drug without his own knowledge may incapacitate him from the required degree of mental judgment. *See In re Holman,* 297 Or 36, 47-56, 682 P2d 243 (1984).

In *Holman,* we found that a lawyer's mental condition caused by addiction to prescription drugs left serious doubts whether he intended to appropriate trust funds or knowingly commingled them with his own. We distinguished this from *In re Warner W. Gregg,* 252 Or 174, 446 P2d 123, 448 P2d 547 (1968), in which the court rejected an alcoholic lawyer's defense that during a period of several months he did not realize when he was drawing checks for his own purposes in violation of his trust. 297 Or at 65-66. Nevertheless, having initially decided to disbar Gregg, the court on rehearing found

evidence of rehabilitation in the fact that Gregg had abstained from alcohol for two and one-half years, and it reduced the penalty to an extended suspension to allow him to show that he was able to resume the practice of law without detriment to the public. 252 Or at 179-181.

In the present case, the accused does not claim, and the record does not show, that alcoholism incapacitated him from knowing what he was doing. He argued, and the trial panel agreed, that his rehabilitation should bear on the disciplinary sanction.

We recently referred to tentative standards suggested by the American Bar Association as an "analytical framework" for the disposition of disciplinary cases. *In re Luebke,* 301 Or 321, 332-34, 722 P2d 1221 (1986). Under "factors which may be considered in mitigation" to reduce the extent of discipline imposed, the standards, without referring specifically to alcohol or other drug abuse, refer generally to "personal or emotional problems" and "physical or mental disability or impairment." The standards do not purport to be and have not been adopted in Oregon as rules intended for textual application, but the placement of the quoted factors shows that the kind of impairment caused by alcoholism can (not necessarily will) mitigate discipline though it is no defense to the disciplinary charge.

The object of professional discipline is not punishment but deterrence and protection of the public against further unprofessional conduct. Having considered the evidence of the accused's professional misconduct and of his determined efforts to avoid future use of alcohol, we conclude that disciplinary action similar to that imposed in *In re Paauwe,* 298 Or 215, 691 P2d 97 (1984), is appropriate here.

■ The accused is suspended from the practice of law for a period of 63 days beginning on October 7, 1986. Thereafter the accused shall be on probation for three years and must fulfill the following conditions: (1) that he refrain entirely from the use of alcohol and continue actively in an alcoholic rehabilitation program, and (2) that he permit Don Muccigrosso of the Oregon State Bar Professional Liability Fund, or a member of the Oregon State Bar designated by the Board of Governors, to monitor his continued participation in an alcohol rehabilitation program. The monitor shall submit

quarterly reports to the Oregon State Bar regarding the accused's compliance. During this probationary period the accused will be subject to summary suspension of his right to practice law upon motion of the Oregon State Bar supported by evidence of a violation of a condition of probation.

The Oregon State Bar is awarded costs.