Submitted on record and brief September 7, accused suspended October 18, petition for rehearing denied November 15, 1977

In re Complaint as to the Conduct of
**WILLIAM A. HEDGES,** *Accused.*
(TC 1233, SC 25316)
570 P2d 73

Dean Heiling and Wallace D. Cegavske, Roseburg, for the Oregon State Bar.

Maurice V. Engelgau, Coquille, filed a brief for the Accused.

PER CURIAM.

**PER CURIAM.**

In this disciplinary proceeding the Accused is charged with conduct alleged to be unethical and in violation of the applicable standards of professional conduct. The Oregon State Bar's complaint contains three causes. The first concerns the Accused's actions with respect to a real property transaction; the second concerns his handling of a probate matter; the third is the aggregate of the first two. The Accused filed an answer denying that he was guilty of those charges. Most of the facts were stipulated before the Trial Board, and there are no important conflicts in the evidence.

With respect to the first charge, it appears that sometime prior to July 26, 1973, Orbus sold to Eno improved real property used by Eno for a residence. As part of the purchase price, Orbus took an unsecured note for $2,500. On July 26, 1973, while there was still an unpaid balance on the note of approximately $2,000, Eno entered into an earnest money agreement to sell his equity in the property to Cook. On August 3, 1973, Orbus brought action against Eno on the note, and summons and complaint were served on the following day. Eno then consulted the Accused as to how to protect the proceeds of the sale. Eno and the Accused regarded Eno's interest in the property as being exempt from execution as a homestead. The Accused was fearful, however, that the proposed sale would be delayed, predicting that the title insurance company would not insure clear title without a "jurisdictional determination" with respect to a homestead exemption.

Pursuant to the Accused's advice, Eno, for a nominal consideration, conveyed the real property to one Herzog in trust to carry out the earnest money agreement. On August 20, 1973, Orbus took a judgment against Eno by default for the unpaid balance of the note. On the following day Herzog conveyed the real property to Cook, and from the sale Eno realized a

net of approximately $1,200. That sum was well below the amount of the applicable homestead exemption.

■ Since the foregoing facts are undisputed, the question is one of law as to whether the Accused's conduct as charged in the complaint "is unethical and in violation of the standards of professional conduct established by law and by the Oregon State Bar and was and is such conduct that, if the Accused were now applying for admission to the Oregon State Bar, his application should be denied." As did the Trial Board and the Disciplinary Review Board, we find with respect to this charge that the Accused, both from a legal and from an ethical standpoint, did nothing more than to preserve his client's property rights and to expedite the performance of the existing sales contract without in any way perpetrating fraud upon anyone. We agree the Accused is not guilty of the charge contained in the first cause of complaint.

On September 11, 1971, one Waring died. The Accused was employed to probate the estate. The principal asset was certain real property which was to be sold with most of the proceeds to go to Portland State University. The real property was not sold until 1974, but the delay in this matter is probably not attributable to the Accused.

The attorney for the University became concerned over the time being taken to conclude probate and addressed letters to the Accused, who was eventually contacted by the Oregon State Bar concerning the complaint of the University's attorney. (This complaint was made only after several months during which the University's attorney had attempted to obtain responses from the Accused concerning the reason for delay.) In August of 1974 the Accused wrote to the Bar, stating that the delay was his fault and that the estate would be closed within a month. One month later the Accused wrote to the personal representative stating that the estate would be closed "right away." Seven months later the Accused informed the

Bar and the personal representative that he had filed a final accounting and petition for a decree of final distribution. Almost one year later the personal representative wrote to the Bar complaining of the delay, of her resulting chagrin and embarrassment with respect to "getting the scholarship money to the University," and that the Accused avoided communicating with her. This caused the Bar to advise the Accused the matter would be referred to the Grievance Committee unless an explanation were forthcoming. The Accused responded that he would "get the supplemental account in the mail that weekend," and that the delay was his fault.

The personal representative eventually contacted one of her relatives who also happened to be a member of the Oregon State Bar. That attorney contacted the Accused, and eventually, on February 8, 1977, wrote to him a letter pointing out that the Accused had agreed over the telephone that he would finish the estate by March 31, 1977. (This would have been 13 days after the disciplinary hearing, which was held on March 18, 1977.) In that letter the attorney also advised the Accused that the attorney had learned the Accused had not applied for Oregon inheritance tax releases, even though he had stated in the final accounting that such application had been made. This all culminated on March 18, 1977, in the Accused's transferring his probate file to the other attorney to complete the probate and the Accused's waiving any claim for attorney fees for services to the estate.

The Trial Board found as follows:

"As to Count Two of the Complaint:

"(1) There was no intent to mislead the court in filing the final accounting wherein the accused stated the releases for income and inheritance taxes had been applied for;

"(2) The failure to complete the returns and file the releases was the result of a dilatory pattern of practice in this entire estate proceeding;

"(3) The handling of the probate of the estate in general was dilatory and unprofessional;

"(4) The facts do not show, however, that any time Mr. Hedges made any excuses or any misrepresentations to his client or to any others;

"(5) The failure of Mr. Hedges to promptly attend to the probate was troublesome and embarrassing to his client;

"(6) There is no evidence to show that this conduct involved any misuse of funds or resulted in any financial loss to the client;

"(7) We find from the evidence, and the candid testimony of the witness, that as this probate become [sic] increasingly older, it became psychologically more difficult for the attorney to conclude the matter;

"(8) There is no evidence that the accused William A. Hedges has handled other clients' business in the same manner as this probate;

"(9) Therefore we find the accused, William A. Hedges guilty of the charges set forth and contained in the second cause of complaint."[1]

The Trial Board recommended that the Accused be publicly reprimanded, although the Trial Board believed that the appropriate sanction would be somewhere between dismissal of the complaint and public reprimand, but no such intermediate sanction exists.

The Disciplinary Review Board found that the record established conclusively that the Accused was guilty of inexcusable delay in the handling of the estate and deserved a public reprimand.

■ We agree with the Trial Board that the handling of the probate was dilatory and unprofessional and that the Accused's failure promptly to attend to the matter was troublesome and embarrassing to the personal representative. We further find that his conduct was troublesome to the principal beneficiary of the estate. It is certainly arguable that his conduct resulted in

---

[1]The Trial Board found the accused not guilty on the third cause of complaint.

some financial loss to this beneficiary. We further find that the Accused did not discharge fully and faithfully his obligation of complete candor to the personal representative.

We agree with the Disciplinary Review Board that the Accused is guilty of inexcusable delay in this matter.

We are more concerned than were the Trial Board and the Disciplinary Review Board with the Accused's conduct in representing to the court when filing the final accounting that he had applied for Oregon inheritance tax releases. We find the inexcusable delay is sufficient in and of itself to warrant a public reprimand. We believe that, when compounded by the misrepresentation to the court, the Accused's conduct deserves a greater sanction. *Compare In re William H. Hubert,* 265 Or 27, 507 P2d 1141 (1973), in which the Accused was publicly reprimanded on the basis of nothing more than making a misrepresentation to the court. *See also* ORS 9.460, providing that an attorney shall never seek to mislead the court by any false statement of fact.

On the other hand, we do not find that the Accused's conduct in this particular misrepresentation to the court was as serious in all the circumstances as that described in *In re Preston,* 269 Or 271, 525 P2d 59 (1974), in which we suspended the Accused for a period of six months.

The order of this court is that the Accused is suspended from the practice of law for a period of 30 days.