Argued October 10, 1978, affirmed April 3,
petition for rehearing denied May 1, 1979

## TROUTMAN, *Respondent,*
*v.*
## ERLANDSON, *Appellant.*
## (No. 423.400L, SC 25321)

593 P2d 793

Ralf H. Erlandson, Milwaukie, argued the cause and filed the briefs in propria persona.

Gerald R. Pullen, Portland, argued the cause and filed the brief for respondent.

DENECKE, C. J.

## DENECKE, C. J.

Plaintiff recovered a verdict for general and punitive damages for defamation. Defendant appeals. Defendant's principal assignment of error is that the trial court erred in denying its motion for directed verdict based upon the ground that the defendant is an attorney, his communication was made in conjunction with a judicial proceeding, and, therefore, it is absolutely privileged.

The parties, former partners, have waged numerous lawsuits against one another. Plaintiff owed Baker Production Credit Association (PCA) at least $140,000, which was secured by a farm. Defendant was a guarantor of that debt. In a prior partnership dissolution suit the trial court decreed that the plaintiff would pay that debt; if he did not and the defendant was required to pay, the plaintiff would convey part of his interest in the farm to defendant. Defendant was attempting to have one Dale Fackrell invest $140,000 to pay PCA in exchange for an interest in the farm.

The debt to PCA was not paid; PCA declared the obligation in default and gave notice it was selling the farm within 60 days unless the default was corrected. Defendant replied to PCA's default notice with a proposal to pay the $140,000, indicating that Fackrell might furnish the funds. Copies were sent to plaintiff's attorney, Fackrell and others. Plaintiff's attorney sent a letter to defendant on approximately the same date. Plaintiff's attorney demanded that defendant either pay the $140,000 or transfer his interest in the farm to plaintiff so he could obtain financing to pay PCA. He also wrote that the plaintiff would be filing lawsuits against defendant for failure to perfect some option rights in other property and defendant's alleged failure to contribute to payment of another debt.

Defendant's reply to this letter contains some of the alleged libelous matter. He wrote that plaintiff "seems to possess a very permissive conscience," and "If he can

[5]

just keep the 'Mr. Hyde' part of his character locked in a closet, I can deal with 'Dr. Jekyll.'" Defendant also wrote in detail about the problems of satisfying the PCA debt, the charged failure by defendant to perfect options, and the other matters referred to in plaintiff's attorney's letter. Copies were sent to Fackrell, PCA and several attorneys.

Defendant had represented himself in the past lawsuits and was continuing to represent himself in all matters with plaintiff. The principal issue at trial and on appeal was whether defendant wrote this letter in his capacity as attorney or as a party-businessman. Solving this issue will not decide the case.

■ This court has recognized the absolute privilege accorded communications made by attorneys in judicial proceedings. *See McKinney v. Cooper,* 163 Or 512, 98 P2d 711 (1940). Likewise, we have recognized the absolute privilege of communications made by parties in judicial proceedings. *Binder v. Oregon Bank,* 284 Or 89, 585 P2d 655 (1978); *Strycker v. Levell and Peterson,* 183 Or 59, 67, 190 P2d 922 (1948); *Moore v. Sater,* 215 Or 417, 420, 335 P2d 843 (1959); dicta in *Ramstead v. Morgan,* 219 Or 383, 388, 347 P2d 594, 77 ALR2d 481 (1959). We have not been asked to determine whether the privilege for parties is coextensive with that for attorneys. We will assume in this case, without deciding, that if the defendant had a privilege as an attorney to write this letter, he would have the same privilege to write it as a party. We hold, however, that there was no privilege because the communication was made to a person who had no direct connection with the judicial proceeding. *Prosser* states the rationale of privilege:

> "* * * It [privilege] rests upon the same idea, that conduct which otherwise would be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation.

[6]

The interest thus favored may be one of the defendant himself, of a third person, or of the general public. If it is one of paramount importance, considerations of policy may require that the defendant's immunity for false statements be absolute, without regard to his purpose or motive, or the reasonableness of his conduct. * * *." Prosser, Torts § 114, p 776 (4th ed 1971).

We stated the same reasoning in a different fashion in *Ramstead v. Morgan, supra* (219 Or at 387). We held in that case that the public interest in having the alleged unethical practice of lawyers uncovered was of such importance that communications to bar grievance committees should be absolutely privileged. As stated, we have held communications by attorneys "preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of a judicial proceeding in which he participates * * *," privileged. 3 Restatement 229-231, Torts § 586, quoted with approval in *Chard v. Galton,* 277 Or 109, 112, 559 P2d 1280 (1977). The privilege "is based upon a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients." *Comment a.* to § 586.

If we assume that defendant's letter was sufficiently connected to a judicial proceeding so as to be privileged insofar as its communication to plaintiff's attorney, or the parties' creditors, we are of the opinion that the communication to a potential investor, Fackrell, cannot be privileged. Neither the past decree nor the new lawsuits directly involved Fackrell. He was indirectly involved because if he invested defendant probably would be able to exercise an alternative granted him in the decree and might be able to more readily pay an obligation which plaintiff claimed defendant owed. These possibilities, important to defendant as they might be, have no direct relationship to the judicial proceeding. Thus we cannot say that they are so important to society that defendant, or

any person in his position, should be granted immunity from malicious, untruthful statements, if they be such.

■ The absolute privilege accorded attorneys and litigants for communications made in connection with judicial proceedings generally concern statements made in the proceeding itself. Statements in affidavits filed in divorce proceedings: *Strycker v. Levell and Peterson, supra* (183 Or 59); statements in written objections to a final account in probate: *McKinney v. Cooper, supra* (163 Or 512); statements in pleadings: *Moore v. Sater, supra* (215 Or 417).

In *Chard v. Galton, supra* (277 Or 109), for the same reasons underlying the privilege as a whole, we extended the privilege to a letter sent in the settlement process from the attorney for an injured client to the insurance company of plaintiff (the defendant in the injury claim). The alleged defamatory statement was that the plaintiff, while drunk, previously had been involved in a fatal accident. The defendant had a duty to his client to send this information, relevant to a settlement, to the plaintiff's insurance company. In the instant case we find no close or direct relationship between any judicial proceeding and the defamatory communication to Fackrell.

The defendant cited *Theiss v. Scherer,* 396 F2d 646 (6th Cir 1968). There, an attorney allegedly defamed plaintiff in a letter the defendant-attorney sent to plaintiff's attorney to the effect that plaintiff was attempting to blackmail defendant by filing a will contest to prevent him from serving as trustee. Copies were sent to four persons who had an interest in the estate. The court, without comment, held this interest was enough to make the communication to the four persons privileged. Assuming the decision was correct, Fackrell had no interest as close and direct as that of the four persons in *Theiss.*

[8]

■ Defendant also contends that plaintiff introduced no evidence that the libelous statements subjected him to hatred, contempt or ridicule, or tended to diminish his esteem, respect or goodwill in the community. The court determines whether the communication is capable of subjecting the plaintiff to hatred, contempt or ridicule, or tended to diminish his esteem, respect or goodwill in the community. *Farnsworth v. Hyde,* 266 Or 236, 238, 512 P2d 1003 (1973). Once the court determines that the statements may be so interpreted, it is for the jury to determine whether the statements were defamatory. "The jury does not have to have specific testimony to this effect because it may draw such a conclusion from all the circumstances surrounding the communication and the relations of the parties." *Beecher v. Montgomery Ward & Co.,* 267 Or 496, 500, 517 P2d 667 (1973).[1]

Affirmed.

---

[1] The defendant did not contend the jury could not award punitive damages. See *Wheeler v. Green,* 286 Or 99, 593 P2d 777 (1979).