Argued and submitted March 3, affirmed July 8, 1981

# BOB GODFREY PONTIAC, INC.,
*Petitioner,*

*v.*

# ROLOFF et al,
*Respondents.*

## (No. 78-5902, CA 16378, SC 27430)

630 P2d 840

Richard C. Houghton, Eugene, argued the cause and filed the briefs for petitioner.

William G. Wheatley, Eugene, argued the cause for respondents. With him on the brief was Jaqua & Wheatley, P.C., Eugene.

Before Denecke, Chief Justice, and Tongue, Lent, Linde, Peterson and Tanzer, Justices.

TONGUE, J.

Linde, J., concurred and filed opinion.

## TONGUE, J.

This is an action for damages against two attorneys alleging violations of their duties as attorneys as provided by ORS 9.460, which states that:

"An attorney shall:

"* * * * *

"(4)    Employ, for the purpose of maintaining the causes confided to him, such means only as are consistent with truth, and never seek to mislead the court or jury by any artifice or false statement of law or fact; * * *."

A previous action had been brought by plaintiff, an automobile dealer, who had sued the purchaser of a used car for the balance of the purchase price. The purchaser, represented by these two attorneys, filed in that action a counterclaim for damages against the dealer alleging, among other things, that the dealer had impliedly warranted the merchantable quality and fitness of the used car; that the car was defective in various aspects, and that the dealer had refused to repair the defects at no cost to the purchaser.

After prevailing in that action, the dealer brought this action against the two attorneys. Its second amended complaint alleged, among other things:

"IV. That during the course of the proceedings of said lawsuit, Defendants Larry Roloff and Douglas Melevin used means that were not consistent with the truth and sought to mislead the Court and jury by artifice and false statements of fact in the following particulars:

"A.    By intentionally falsely alleging in the pleadings that Plaintiff had sold the automobile to Defendant Ruth Mellen with warranties.

"B.    By intentionally falsely alleging in the pleadings that Plaintiff had failed and refused to repair alleged defects in the automobile purchased by Ruth Mellen from Plaintiff at no cost to Ruth Mellen.

"C.    By allowing Ruth Mellen to give false sworn testimony to the effect that Plaintiff had never offered to repair her automobile if it were defective at no charge to her.

"D.    By seeking to exclude testimony and evidence from the Court and jury as to Plaintiff's offers to fix Defendant Ruth Mellen's automobile at no cost to her if the automobile purchased were defective.

"V. As a direct and proximate result of Defendants Larry Roloff and Douglas Melevin's conduct, as alleged hereinabove, Plaintiff was required to defend against Ruth Mellen's action against Plaintiff, and Plaintiff's reputation was damaged in the amount of $25,000.00, and Plaintiff incurred attorney's fees, not recoverable in Ruth Mellen's action against Plaintiff, in the amount of $3,311.55."

Defendants' (the two lawyers) demurrer to that complaint upon the ground that it failed to state a cause of action was sustained. Plaintiff then filed a third amended complaint, with somewhat different allegations, to which defendants filed an unsuccessful demurrer, an answer, and a motion for summary judgment, which was allowed.[1]

Plaintiff then appealed to the Court of Appeals from the resulting adverse judgment and assigned as error the sustaining of defendants' demurrer to its second amended complaint. In that appeal plaintiff contended that:

"Intentional violations of the statutory duties of an attorney as set out in ORS 9.460 should give rise to a claim for relief by a party damaged as a consequence."

In support of that contention plaintiff cited, among other cases and authorities, the decision by this court in *O'Toole v. Franklin*, 279 Or 513, 569 P2d 561 (1977).

---

[1] It should be noted that the demurrer to the allegation in subparagraph C was sustained on the ground that it "does not specifically allege intention on the part of the Defendant." Plaintiff then filed a third amended complaint alleging that defendants "*intentionally* allow(ed) Ruth Mellen to give false sworn testimony." The demurrer to that complaint was not sustained but was overruled. Defendant then filed a motion for summary judgment, supported by affidavits to the effect that defendants did not know that the testimony which Ruth Mellen gave was false. The affidavit on that subject was not contradicted by plaintiff's affidavit opposing defendants' motion for summary judgment. That motion was then allowed. Plaintiff has not assigned that ruling as error on this appeal and has made no contention that a distinction should be made between liability for intentional false allegations in a pleading and for the intentional use of false evidence. Accordingly, the question whether plaintiff would have a private cause of action in tort under ORS 9.460(4) for intentional use of false testimony is not presented for decision in this case.

Defendants also contend that if the trial court did not err in allowing their motion for summary judgment (which is not assigned as error on this appeal), they would necessarily be entitled to a summary judgment on the issues raised by the pleadings on which the summary judgment was based and that the factual issues raised by the pleadings were settled by the summary judgment. Because of our disposition of this case on the pleadings, we need not decide this question.

The Court of Appeals affirmed the trial court by an opinion in which that court said:

"Of course, the Supreme Court's statement in *O'Toole* is dictum, not binding precedent. In view of the potential ramifications of a rule such as plaintiff here seeks, we believe that the Supreme Court, if squarely faced with the problem, would follow the weight of authority in other jurisdictions to the effect that a statute or rule setting forth the duties of an attorney toward clients or the public does not create a new and separate tort action." 48 Or App 601, 605, 617 P2d 672 (1980).

We granted plaintiff's petition for review to consider this question.

## 1. *Our decision in O'Toole v. Franklin.*

*O'Toole v. Franklin, supra,* was an action by a doctor against attorneys and their client, charging both malicious prosecution of a medical malpractice action and also negligence by the attorneys in failing, among other things, to properly investigate the claim of malpractice before filing that action. The complaint by the doctor sought $50,000 for damage to his professional reputation and for "emotional disturbance and anguish." The appeal in that case was also from a judgment following an order sustaining a demurrer to that complaint.

In affirming the trial court, this court held that in the action for malicious prosecution the demurrer was properly sustained because there was no "special injury," upon application of the rule that "special injury" is required in such cases, and that " '[s]pecial injury' in [the] procedural sense excludes the kind of secondary consequences that are a common and often unavoidable burden on defendants in 'all similar causes,' " 279 Or at 517, citing *Buck v. Gale,* 271 Or 90, 92, 530 P2d 1248 (1975). Although recognizing (at 520) that "[t]his court is not unprepared to reconsider an old common law rule," we refused to abandon the "special injury" rule, as proposed by plaintiffs, noting (at 521) that "the legislative process is not inappropriate, given adequate time and preparation, for studying and resolving the competing and the common interests at stake in private law," as had been done on such subjects as comparative negligence, assumption of risk, and no-fault automobile insurance.

This court also held in *O'Toole* (at 522) that plaintiff's complaint did not state a cause of action for negligence because it would be incongruous to allow recovery of damages other than for "special injury" in an action based upon "mere carelessness" while denying such recovery in an action for malicious pursuit of an unfounded civil action.

The court then noted (at 522-23) that in support of his cause of action for negligence the plaintiff in that case relied upon the duties imposed by ORS 9.460(3) and (7) to protect members of the public.[2] In rejecting violation of the provisions of that statute as the basis for a negligence action, this court said (at 523-24):

"It is true that the duties expressed in these provisions of the Oregon State Bar act run to members of the public beyond an attorney's clients. In the present case, the complaint did not in fact allege that defendants were motivated by the 'passion or interest' proscribed by subsection (7), but the allegation quoted above does appear to invoke subsection (3). Taken by itself, it asserts a violation of that subsection by pursuit of an action *known* to be wrongful and unjust. If it stood alone, it would appear to go beyond negligence to allege a deliberate breach of a duty imposed by statute to protect members of the public against the precise kind of injury of which plaintiffs complain.

"*Violations of duties of this kind often do give rise to private rights of action independent of the common law.* * * * And of course, the professional duties imposed by ORS 9.460 bind attorneys independently of any 'special injury' to anyone. However, in the present case the allegation of the attorneys' knowledge was pleaded expressly as a specification of negligence, not as an intentional and deliberate breach of a statutory duty to plaintiffs." (Emphasis added.)

---

[2] ORS 9.460 provides that:

"An attorney shall:

"* * * * *

"(3) Counsel or maintain such actions, suits, or proceedings or defenses only as may appear to him legal and just, except the defense of a person charged with a public offense;

"* * * * *

"(7) Not encourage the commencement or continuance of an action, suit or proceeding from any motives of passion or interest; * * *."

In considering the applicability of these statements in *O'Toole* to this case, it is significant to note that the plaintiff in that case did not contend, as in this case, that this court should "create" a new and independent cause of action for damages against attorneys for breach of duties imposed by ORS 9.460. Instead, the contention by the plaintiff in that case was that for the purposes of a common law action for negligence, the violation of a duty imposed by statute "constitutes negligence as a matter of law," as in *Stachniewicz v. Mar-Cam Corporation,* 259 Or 583, 586, 488 P2d 436 (1971), the only case cited by plaintiff in *O'Toole* in support of its contention based upon ORS 9.460.[3] This distinction is discussed below.

Aside from the importance of this distinction, the parties in *O'Toole* did not brief or argue the question presented in this case, i.e., whether violation of any of the duties stated by ORS 9.460 gives rise to a new and independent cause of action. Of equal importance, our statement in *O'Toole* that "violations of duties of this kind often do give rise to private rights of action independent of the common law," was qualified, not absolute. For these reasons, we do not regard that statement in *O'Toole* as decisive upon the question presented for decision in this case.

2. *Civil liability based upon violation of a statutory duty.*

It should be noted at the outset, although by no means controlling in our analysis of the problem presented for decision in this case, that this court has authority under ORS 9.480 to disbar, suspend or reprimand attorneys for violations of ORS 9.460, and under ORS 9.490 to discipline attorneys for violations of the Code of Professional Responsibility adopted by this court and which in DR 7-102 covers

---

[3] In *Stachniewicz v. Mar-Cam Corporation,* 259 Or 583, 586, 488 P2d 436 (1971), this court held that:

"A violation of a statute or regulation constitutes negligence as a matter of law when the violation results in injury to a member of the class of persons intended to be protected by the legislation and when the harm is of the kind which the statute or regulation was enacted to prevent. *Dimick v. Linnell,* 240 Or 509, 511, 402 P2d 734 (1965); Smith v. Portland Traction Co., 226 Or 221, 359 P2d 899 (1961). The reason behind the rule is that when a legislative body has generalized a standard from the experience of the community and prohibits conduct that is likely to cause harm, the court accepts the formulation."

essentially the same concerns as expressed in ORS 9.460(4), and that this court has exercised authority granted under those provisions on many occasions to discipline attorneys for conduct of the type found in ORS 9.460(4).[4]

Also, before reviewing the decisions by other courts which have considered the question whether violation by an attorney of an ethical duty imposed by statute or by a Code of Professional Responsibility gives rise to a new and private cause of action for damages "independent of the common law," it is helpful to review previous decisions by this court in deciding, in different contexts, whether violation of a duty imposed by statute will give rise to a private cause of action.

In this court's most recent discussion of this question, *Miller v. City of Portland,* 288 Or 271, 604 P2d 1261 (1980), it was noted (at 276-78) that an initial distinction must be made between (1) cases in which liability would be based upon violation of a statutory duty when there is also an underlying common law cause of action, and (2) cases in

---

[4] *See, e.g., In re Green,* 290 Or 291, 620 P2d 1379 (1980) (misrepresentation to court warranted sixty-day suspension); *In re Barnes,* 281 Or 375, 574 P2d 657 (1978) (misrepresentation to court regarding search warrant warranted reprimand); *In re Hedges,* 280 Or 155, 570 P2d 73 (1977) (misrepresentation to court factor in thirty-day suspension); *In re Preston,* 269 Or 271, 524 P2d 59 (1974) (misrepresentation to hearing officer warranted six-month suspension); *In re Hubert,* 265 Or 27, 507 P2d 1141 (1973) (misrepresentation to court warranted reprimand); *In re Brown,* 262 Or 171, 493 P2d 1376, 497 P2d 668 (1972) (misleading court in probate matter factor in two-year suspension); *In re Little and King,* 247 Or 503, 431 P2d 284 (1967) (misrepresentation to probate court factor in one-year suspension); *In re Brant,* 242 Or 562, 410 P2d 824 (1966) (misrepresentation of facts to court factor in disbarment); *In re Reynolds,* 231 Or 159, 372 P2d 188 (1962) (attempt to change filing date on complaint warranted two-year suspension); *In re Weinstein,* 227 Or 454, 362 P2d 762 (1961) (procuring witness to give false testimony warranted two-year suspension); *In re Heider,* 217 Or 134, 341 P2d 1107 (1959) (misrepresentation in pleading factor in disbarment); *In re Moore,* 218 Or 403, 345 P2d 411 (1959) (misrepresentation to court factor in one-year suspension); *In re Reinmiller,* 213 Or 680, 325 P2d 773 (1957) (misrepresentation of jurisdictional facts in divorce case factor in disbarment); *In re Schmalz,* 169 Or 518, 129 P2d 825 (1942) (false report of expenses as executor of estate factor in disbarment); *In re Kitchen,* 157 Or 32, 68 P2d 1068 (1937) (inducing witness to give false testimony warranted six-month suspension); *In re Glover,* 156 Or 558, 68 P2d 766 (1937) (giving false testimony warranted three-year suspension); *Ex parte Eastman,* 155 Or 15, 62 P2d 27 (1936) (misrepresentation to court in falsely signing affidavit factor in one-year suspension); *State v. Mannix,* 133 Or 329, 288 P 507, 290 P 745 (1930) (misrepresentation to court factor in disbarment); *State v. Goldstein,* 109 Or 497, 220 P 565 (1923) (misrepresentation to court warranted disbarment); *Ex parte Finn,* 32 Or 519, 52 P 756 (1898) (misrepresenting validity of affidavits warranted disbarment).

which liability would be based upon violation of a statute when there is no underlying common law cause of action.

■      A common example of a case of the first type is an action for damages for negligence in which it is contended that violation of a duty imposed by statute is negligence per se in that the statutory duty is the standard of conduct of a reasonably prudent person, although the other elements of a cause of action for negligence must still be shown. The test for determining whether violation of a statute constitutes negligence per se in such a case, as stated in *Stachniewicz v. Mar-Cam Corporation,* 259 Or 583, 586, 488 P2d 436 (1971), is (1) whether the injured person is a member of the class intended by the legislature to be protected, and (2) whether the harm is of the kind which the statute was intended to prevent. *See also Miller, supra,* at 276.

In *Miller,* however, it is stated that the approach to be taken by this court is somewhat different in cases in which there is no underlying common law cause of action and when the court is called upon to, in effect, "create" or "recognize" a new tort. 288 Or at 278. In such a case it must still be determined whether the plaintiff is a member of the class protected by the statute and whether the harm inflicted is the type intended to be protected against. The court must undertake further analysis, however, by an examination of the statute to determine whether there exists any explicit or implicit legislative intent that a violation of a statute should give rise to a tort cause of action. *Miller, supra,* at 278.

If no intent either way is evident from the statute, then, according to *Miller,* at 278, this court must attempt to ascertain how the legislature would have dealt with the problem had it been considered by the legislature. This is usually done, according to *Miller,* at 278, by *"looking at the policy giving birth to the statute and determining whether a civil tort action is needed to carry out that policy."* (Emphasis added.) In *Miller,* upon application of these criteria under quite different facts, this court declined (at 279) to "create" a new and private cause of action for damages for violation of a statute.[5]

---

[5] The Supreme Court of the United States, however, applied a more limited test in *California v. Sierra Club,* ___ US ___, 68 LEd 2d 101, 101 S Ct 1775 (1981), in holding (68 LEd 2d at 110) that:

In *Burnette v. Wahl,* 284 Or 705, 588 P2d 1105 (1978), this court also declined to "create" or "recognize" a new private cause of action for violation of a statute, again under quite different facts. In that case we described (at 712) the question to be decided as being whether such a new tort action was "necessary and desirable to further vindicate the right [of the aggrieved party] or to further enforce the duty created by statute." In employing the above analysis, this court in *Burnette* emphasized that in such a case it is the court, and not the legislature, which is "creating" or "recognizing" the new cause of action, stating (at 711-12) that:

> "The establishment by courts of a civil cause of action based on a criminal or regulatory statute is not premised upon legislative intent to create such an action. It is obvious that had the legislature intended a civil action it would have provided for one, as legislatures many times do. Therefore, the underlying assumption is that it was not intended that the statute create any civil obligation or afford civil protection against the injuries which it was designed to prevent. When neither the statute nor the common law authorizes an action and the statute does not expressly deny it, *the court should recognize that it is being asked to bring into existence a new type of tort liability on the basis of its own appraisal of the policy considerations involved. * * *
>
> "Because it is plain to the legislature that it could have created the civil liability and it has not, courts must look carefully not only at the particular statute establishing the right or duty but at all statutes which might bear either directly or indirectly on the legislative purpose. *If there is any chance that invasion into the field by the court's establishment of a civil cause of action might interfere with the total legislative scheme, courts should err on the side of*

---

"The federal judiciary will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide."

and that if such an intent is not evident

"* * * it is unnecessary to inquire further to determine whether the purpose of the statute would be advanced by the judicial implication of a private action or whether such a remedy is within the federal domain of interest. These factors are only of relevance, if the first two factors give indication of congressional intent to create the remedy."

*non-intrusion because it is always possible for the legislature to establish such a civil cause of action if it desires."* (Emphasis added.)[6]

Again, in *Farris v. United States Fidelity and Guaranty Company,* 284 Or 453, 587 P2d 1015 (1978), this court held that violation of provisions of the Insurance Code prohibiting certain conduct did not give rise to a tort action. The primary reason for so holding was that other provisions of the code provided for civil penalties payable to the state for code violations and that this was an indication that the legislature did not intend a private cause of action. 284 Or at 458.

In *Brown v. Transcon Lines,* 284 Or 597, 588 P2d 1087 (1978), however, this court stated (at 604) that ORS 659.410, making it an unlawful employment practice to discriminate against a worker for applying for workers' compensation benefits, recognized a public policy that supported a civil action for damages for wrongful discharge by a worker discharged for applying for such benefits. The court made it clear, however (at 604 and 610-12), that it was not "creating" or "recognizing" a new cause of action in that case based upon violation of ORS 659.410, but was holding only that such an employee had an existing common law cause of action for wrongful discharge. *Brown,* therefore, is best characterized as an extension of an existing common law cause of action, rather than creation of a new cause of action. (See distinction by this court in *Miller, supra,* at 276-78, as previously noted.)

In another recent case this court also used a violation of a statutory duty as the basis for finding liability under an existing common law cause of action for negligence, i.e., as negligence per se. *See Davis v. Billy's Con-Teena, Inc.,* 284 Or 351, 587 P2d 75 (1978) (violation of ORS 471.130(1), prohibiting sale of liquor to minors, as negligence per se).

From this review of decisions by this court it appears that although this court has stated circumstances under

---

[6] Accord, *Miller, supra,* at 278-79; Restatement of Torts (Second), § 874A, Comment d. *But see* Stone, *The Common Law in the United States,* 50 Harv L Rev 4, 13-15 (1936) (advocating that courts not be reluctant to use statutes as a premise for legal reasoning and as a basis from which to judicially create new cause of actions).

which it would "create" or "recognize" a new cause of action for damages for violation of a statute when there is no "underlying" common law cause of action, the court has never done so to this date. Indeed, this court has said, in effect, in *Burnette,* that in a doubtful case it would not do so, but would leave the matter to the legislature. 284 Or at 712.

The issue presented in this case is clearly one in which there is no underlying common law cause of action. In *O'Toole* this court rejected the contention that alleged violations of ORS 9.460(3) and (7) provided the basis for a common law action for damages for negligence. Also, because ORS 9.460 was originally enacted in 1862, we find nothing in the statute or its legislative history to indicate that the legislature intended that there should be liability for violation of its provisions. Thus, in this case, as in *Miller* and *Burnette,* this court must decide, "on the basis of its own appraisal of the policy considerations involved," whether to "bring into existence a new type of tort liability" for damage to reputation and for attorney fees against an attorney who has allegedly violated the provisions of ORS 9.460(4).

The concurring opinion by Linde, J., is critical of our quotations from *Burnette* and our application of the analysis adopted by this court in that case to the problem presented in this case.

It may be that in some future case this court will decide to abandon the analysis adopted by it in those cases and to adopt the analysis proposed by Linde, J. In this case, however, neither party has either questioned the analysis adopted by this court in *Miller* and *Burnette* or proposed that a different analysis be adopted by this court in this case. Under these circumstances, we believe it to be proper to not only decide this case by application of the analysis adopted by this court in *Miller* and *Burnette,* but in doing so to refer specifically to the analysis as adopted in those cases.

This analysis of the problem presented in this case is similar to the analysis proposed by the Restatement of Torts (Second) § 874A, for application in deciding when such liability should be imposed as follows:

"When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action."

The official comment to the Restatement proposes that the primary test for application in determining whether to impose civil liability should be whether the new civil remedy is "consistent with the legislative provision, appropriate for promoting its policy and needed to assure its effectiveness." Comment f, § 874A.

Before undertaking to apply this analysis to the question whether such attorneys should be held liable for such damages in a civil action for damages, we next discuss the decisions by other courts which have considered and decided this same question.

3. *Decisions by other courts.*

Other courts have also addressed the question whether an attorney's violation of a statutory duty or of the Code of Professional Responsibility (CPR) gives rise to a private cause of action for damages. All of the courts that have directly considered this question have held that it does not. *See Martin v. Trevino,* 578 SW 2d 763 (Tex Civ App 1978); *Tingle v. Arnold, Cate & Allen,* 129 Ga App 134, 199 SE 2d 260 (1973) (statute prohibiting solicitation); *Merritt-Chapman & Scott Corp. v. Elgin Coal, Inc.,* 358 F Supp 17 (ED Tenn 1972); *Bush v. Morris,* 123 Ga App 497, 181 SE 2d 503 (1971) (statute prohibiting DA from having private practice); *Lyddon v. Shaw,* 56 Ill App 3d 815, 372 NE 2d 685 (1978); *Gifford v. Harley,* 62 AD 2d 5, 404 NYS 2d 405 (1978); *Hill v. Willmott,* 561 SW 2d 331 (Ct App Ky 1978); *Drago v. Buonagurio,* 46 NY 2d 778, 386 NE 2d 821 (1978); *Spencer v. Burglass,* 337 So 2d 596 (La App 1976); *Noble v. Sears, Roebuck & Co.,* 33 Cal App 3d 654, 109 Cal Rptr 269 (1973); *Bickel v. Mackie,* 447 F Supp 1376 (ND Iowa 1978); *Nelson v. Miller,* 227 Kan 271, 607 P2d 438 (1980); *Young v. Hecht,* 3 Kan App 2d 510, 597 P2d 682 (1979); *Friedman v. Dozorc,* 83 Mich App 429, 268 NW 2d

673 (1978); *Brody v. Ruby,* 267 NW 2d 902 (Iowa 1978).[7] It also appears that most legal writers on this subject approve the rule as stated by these courts.[8]

The principal reasons for this rule, as stated in the opinions by these courts, are the following:

(a)   The statute or Code of Professional Responsibility was not intended to create a private cause of action. On the contrary, the sole intended remedy for a violation of such a statute or code is the imposition of discipline by disbarment, suspension or reprimand of the offending attorney. *See, e.g., Martin v. Trevino, supra,* at 770; *Bickel v. Mackie, supra,* at 1383; *Merrit-Chapman & Scott Corp. v. Elgin Coal, Inc., supra,* at 22; *Hill v. Willmott, supra,* at 333-34, and *Noble v. Sears, Roebuck & Co., supra,* at 271-72. *See also Brody v. Ruby, supra,* at 907-08; *Spencer v. Burglass, supra,* at 600-01, and *Tingle v. Arnold, Cate & Allen, supra,* at 263.

(b)   Other remedies, such as malicious prosecution, adequately protect the public from harassment or abuse

---

[7] Some of these cases did not involve a violation of statutory duties but involved violations of the Code of Professional Responsibility. *See Hill v. Willmott, supra; Drago v. Buonagurio, supra; Spencer v. Burglass, supra; Noble v. Sears, Roebuck & Co., supra; Bickel v. Mackie, supra; Young v. Hecht, supra; Friedman v. Dozorc, supra; Brody v. Ruby, supra.* None of these decisions, however, mentioned the statute-CPR distinction as a factor, and the reasoning employed in most of the cases would seem equally applicable to statutory duties as well as to duties under the CPR.

Some of the cases involved actions for negligence and did not involve allegations of *deliberate* violations of the statute or code. *See Hill v. Willmott, supra; Martin v. Trevino, supra; Bickel v. Mackie, supra; Nelson v. Miller, supra; Friedman v. Dozorc, supra; Brody v. Ruby, supra; Gifford v. Harley, supra.* Again, however, none of the cases discuss that distinction as important and several cases have language that seems to preclude civil liability for any violation of a statute or code, whether the violation was negligent or deliberate. *See Hill v. Willmott, supra; Drago v. Buonagurio, supra; Martin v. Trevino, supra.* In three other cases involving private tort actions reference was made to violations by lawyers of disciplinary rules. *See Cooper v. Public Finance Corp.,* 246 SE 2d 684 (1978); *Harmatz v. Allstate Ins. Co.,* 170 F Supp 511, 512 (SD NY 1959), and *Kinnamon v. Straitman & Snyder,* 66 Cal App 3d 893, 136 Cal Rptr 321 (1977). All three cases are clearly distinguishable, however.

[8] *See* Birnbaum, *Physicians Counterattack: Liability of Lawyers for Instituting Unjustified Medical Malpractice Actions,* 45 Fordham L Rev 1003, 1074-77 (1977); Thode, *The Groundless Case - The Lawyer's Tort Duty to His Client and to the Adverse Party,* 11 St. Mary's LJ 59, 73-74 (1979). *See also* R. Mallen & V. Levit, Legal Malpractice § 51.5 (1980 Supp). *But see* Wolfram, *The Code of Professional Responsibility as a Measure of Attorney Liability in Civil Litigation,* 30 SC L Rev 281, 310-314 (1979).

by unprofessional lawyers. *See, e.g., Nelson v. Miller, supra,* at 451, and *Merrit-Chapman & Scott Corp. v. Elgin Coal, Inc., supra,* at 22.

(c)   To expose attorneys to actions for damages for breach of ethical duties imposed by such statutes and codes would be contrary to the "obvious public interest" in affording every citizen "the utmost freedom of access to the courts." *See, e.g., Lydden v. Shaw, supra,* at 690, and *Hill v. Willmott, supra,* at 334.[9] *See also Brody v. Ruby, supra,* at 907.

4.   *For this court to "create" or "recognize" a new cause of action in this case to recover for damage to reputation and attorney fees is not necessary to carry out the policy of the statute and would be inconsistent with long-established rules and policies.*

■   Upon application of the analysis as previously stated by this court in *Miller v. City of Portland, supra,* it would appear that the plaintiff in this case may be a "member of the class" intended to be protected by ORS 9.460(4). It is not so clear, however, for reasons to be stated, whether the damages claimed by the plaintiff in this case (damages to reputation and attorney fees) were of a type intended to be protected against or that the creation by this court of a new private cause of action to recover such damages is both consistent with the policies of that statute and "needed to carry out the policy" of ORS 9.460(4).

The damages sought by this plaintiff, and perhaps the principal damages that would be sought in most such cases, are for damage to reputation and for attorney fees incurred in the previous action. This court, however, has

---

[9] As stated in *Lyddon v. Shaw,* 372 NE 2d 685, 690, 56 Ill App 3d 815 (1978):

"'* * * a litigant's free access to the courts would frequently be of little value to him if he were denied counsel of his choice by a rule which rendered attorneys fearful of being held liable as insurers of the merits of their client's case, and therefore unwilling to undertake representation in close or difficult matters. The very purpose of a court of law is to determine whether an action filed by a party has merit * * *."

As also stated in *Hill v. Willmott,* 561 SW 2d 331, 334 (Ky App 1978):

"The attorney must have the same freedom in initiating his client's suit as the client. If he does not, law suits now justifiably commenced will be refused by attorneys, and the client, in most cases, will be denied his day in court."

previously considered the respective rights of parties under such circumstances and for important policy reasons has consistently rejected claims against attorneys for civil liability for such damages. Creation by this court of a new tort action for such damages for violation of ORS 9.460(4) would be inconsistent with those policies.

Thus, in cases involving actions for malicious prosecution, this court has long held that there can be recovery only for the kind of extraordinary harm contemplated by the term "special injury," which excludes "the kind of secondary consequences that are the common and often unavoidable burden on defendants in 'all similar causes'." *See O'Toole v. Franklin,* 279 Or 513, 516-17, 569 P2d 561 (1977); *Donovan v. Barnes,* 274 Or 701, 703-04, 548 P2d 980 (1976); *Carnation Lbr. Co. v. McKenney,* 224 Or 541, 546-47, 356 P2d 932 (1960); *Mitchell v. Silver Lake Lodge,* 29 Or 294, 296-97, 45 P 798 (1896). As in *O'Toole,* where we held (at 517) that damage to professional reputation would be common to medical malpractice actions, damage to business reputation would also be common in actions against a car dealer when breach of warranty is alleged, as in this case. Recovery of attorney fees incurred in the previous action is even more clearly excluded from such a definition of "special injury" because such an expense is even more of a "common and often unavoidable burden on defendants in 'all similar causes.' "

The policy reason for the requirement of "special injury" was recently stated by this court in *Donovan v. Barnes, supra,* as follows:

"The justification for this restriction lies in the policy of maintaining free access to the courts by individuals seeking to vindicate their rights. This policy could be impaired if litigants had reason to fear retaliatory action should their claim prove unfounded. However, the policy is overcome when in seeking to vindicate his own rights a litigant interferes with the property or liberty of the defendant in such a way as to cause the defendant to incur some special damage or unusual hardship." 274 Or at 703-04, n. 1.

*Accord, Carnation Lbr. Co. v. McKenny,* 224 Or 541, 356 P2d 932 (1960).

In *O'Toole v. Franklin, supra,* this court, after noting that this rule has been the subject of criticism,

reaffirmed this same rule and its application in an action against an attorney for malicious prosecution. 279 Or at 518-19. It was further stated in *O'Toole* (at 520) that Article I, Section 10 of the Oregon Constitution also supports retention of the "special injury" rule for essentially the same reasons.[10]

Thus, we stated (at 520) that:

"* * * these rules protect the freedom of litigants to pursue their remedies in court that is the central concern of section 10 as a whole. One party's remedy is another's hazard, and some allotment between them is inescapable, but it would be ironic to derive a looser test of malicious prosecution from a constitutional guarantee of access to the courts. What weight article I, section 10 adds to striking the balance falls rather on the other side of the scales."

In other words, even if it were to be held that this court should "create" or "recognize" a new private cause of action against an attorney for breach of ORS 9.460(4), the same reasons which limit recovery in actions for malicious prosecution to the kind of extraordinary harm contemplated by the long-established rule requiring some "special injury" in such cases, would compel the same conclusion with respect to the proposal of a new cause of action to recover for damages to reputation and attorney fees against an attorney under ORS 9.460(4).

This being so, it also follows that there is no "need" or necessity for this court to create a new cause of action to collect for the same damages. For the same reasons, the recognition of a new cause of action to collect for damages other than those involving "special injury" would be inconsistent with policies and rules long established as fundamental to our legal system.

This same concern for providing free access to the courts is also the basis for the long-standing rule that both party litigants and their attorneys have an absolute privilege against defamation for statements made in the

---

[10] Article I, Section 10, of the Oregon Constitution, provides:

"No court shall be secret, but justice shall be administered openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

context of judicial proceedings. *See Troutman v. Erlandson,* 286 Or 3, 593 P2d 793 (1979); *Binda v. Oregon Bank,* 284 Or 89, 585 P2d 655 (1978); *Chard v. Galton,* 277 Or 109, 559 P2d 1280 (1977). This privilege has been extended to statements in pleadings as well as statements in court. *Moore v. Sater,* 215 Or 417, 335 P2d 843 (1959).

The policy reason for this privilege is the same as that found in the "special injury" requirement for malicious prosecution. Thus, in *Troutman, supra,* at 6-7, this court stated that the attorney privilege "is based upon a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients." (Quoting Restatement of Torts (Second) § 586, Comment A); *Accord Chard v. Galton,* 277 Or 109, 559 P2d 1280 (1977).

Both the "special injury" requirement for malicious prosecution and the privilege against defamation are the result of balancing the need to protect people against unconscionable litigation and, at the same time, the need to afford attorneys the utmost freedom in defense of their client's causes. The justifications for these rules are not only long rooted in our law[11] but have also been reexamined and affirmed by this court a number of times in the last few years.[12]

In *O'Toole* this court only recently considered and rejected the contention that the rule requiring some "special injury" be abandoned as a requirement for an existing common law cause of action for malicious prosecution. Having done so, it would be incongruous for this court to "create" or "recognize" a new cause of action for recovery of damages other than those involving some "special injury."

---

[11] *Mitchell v. Silver Lake Lodge,* 29 Or 294, 45 P 798 (1896) ("special injury" required for malicious prosecution); *Cooper v. Phipps,* 24 Or 357, 33 P 985 (1893) (party as witness has absolute privilege against defamation); *Irwin v. Ashurst,* 158 Or 61, 74 P2d 1127 (1938) (attorney privilege against defamation absolute).

[12] *O'Toole v. Franklin, supra; Donovan v. Barnes,* 274 Or 701, 703-04, 548 P2d 980 (1976) (affirming "special injury" required in malicious prosecution); *Buck v. Gale,* 271 Or 90, 92-93, 530 P2d 1248 (1975); *Balsiger v. American Steel,* 254 Or 204, 451 P2d 868, 458 P2d 932 (1969); *Troutman v. Erlandson,* 286 Or 3, 593 P2d 793 (1979); *Chard v. Galton,* 277 Or 109, 112, 559 P2d 1280 (1977); *Binder v. Oregon Bank,* 284 Or 89, 91, 585 P2d 655 (1978).

■ We are also mindful of the fact that this plaintiff asks that we "create" or "recognize" a new cause of action for intentional, rather than malicious, violation of ORS 9.460(4). In *O'Toole* we held (at 522) that because recovery for other than "special injury" is to be denied in an action for malicious prosecution of a civil cause of action, it necessarily follows that such recovery must be denied in an action for negligent prosecution of a civil action. Because we hold that, for reasons previously stated, no new private cause of action should be "created" or "recognized" for recovery for damages other than "special injury" resulting from malicious conduct by an attorney in violation of ORS 9.460(4), it also follows that no private cause of action should be "created" or "recognized" for recovery of other than "special injury" for conduct by an attorney who violates the provisions of ORS 9.460(4) intentionally, but not maliciously.

If ORS 9.460 were a recent legislative enactment, it might be contended that it represents a new statement of policy by the legislature designed to go beyond these rules. That is not the case, however. ORS 9.460 was enacted in 1862 and has undergone only minor grammatical and spelling changes since that time.[13] Therefore, the statute cannot be construed to reflect a new legislative statement of policy so as to require this court to reevaluate these long-held principles. Again, as stated in *O'Toole*, at 522:

> "That this common law action would offer no remedy against baseless malpractice actions in the absence of 'special injury' has been well known; the court reaffirmed the requirement as recently as 1969, 1971, 1975, and 1976 in the cases referred to above. No newly demonstrated flaw or major change in related law or in external conditions justifies our departure from these recent holdings now."

Finally, in the light of these various considerations, we must also bear in mind the caveat expressed in *Burnette v. Wahl, supra,* regarding the judicial creation of new remedies, as follows:

---

[13] Deady, General Laws of Oregon (1865), Sec. 1006(4), provides as follows:

"To employ, for the purpose of maintaining the causes confided to him, such means only as are consistent with truth, and never to seek to mislead the court or jury, by any artifice or false statement of law or fact; * * *."

"If there is any chance that invasion into the field by the court's establishment of a civil cause of action might interfere with the total legislative scheme, courts should err on the side of non-intrusion because it is always possible for the legislature to establish such a civil cause of action if it desires." 284 Or at 712.

To the same effect, *see O'Toole v. Franklin, supra,* at 521-22.

■      For these reasons, we decline to "create" or "recognize" a new private cause of action for conduct by attorneys who violate duties imposed by ORS 9.460(4) for the recovery of damage to reputation or attorney fees resulting from or incurred in the defense of a civil action. We do not hold that an attorney who intentionally violates duties imposed by ORS 9.460(4) has *no* liability for damages. We hold, however, that such an attorney has no liability for damages to reputation and attorney fees, as contended by the plaintiff in this case. We do not reach the question whether there can be recovery for other damages suffered by a litigant as the result of an attorney's deliberate misconduct.

The decisions by the Court of Appeals and by the trial court are affirmed.

**LINDE, J.,** concurring.

The Court rejects plaintiff's claim for damages based on asserted violations of defendants' professional duties under ORS 9.460(4)[1] because plaintiff did not plead that the allegedly false pleadings filed against it in the earlier action caused special injuries beyond the ordinary and typical consequences attendant on defending against an opponent's allegations. I agree that in a state which, like Oregon, requires "special injury" in an action for wrongful prosecution of civil proceedings, *O'Toole v. Franklin,* 279 Or 513, 569 P2d 561 (1977), the financial and personal costs typically associated with litigating a legal dispute also do

---

[1] ORS 9.460 provides that:

"An attorney shall:

". . . .

"Employ, for the purpose of maintaining the causes confided to him, such means only as are consistent with truth, and never seek to mislead the court or jury by any artifice or false statement of law or fact; . . ."

not give rise to a private claim for damages for knowingly filing a baseless pleading, for the same reasons stated in *O'Toole,* even though opposing counsel may be subject to discipline under ORS 9.460(4). The ordinary incidents of litigation, including mutual accusations, are part of the price of living in a society which values every person's right to pursue a grievance in court, or to seek "a remedy by due course of law for injury done him in his person, property, or reputation," as Oregon Constitution, Article I, § 10, puts it. 279 Or at 520.

These reasons may not apply, and the rule as to special damages therefore may be different, when the violation of that section extends to the knowing use of false evidence, which subjects an opponent not only to the costs of having to appear and defend but to the risk of unjustly suffering a loss of property or perhaps (as in family disputes) of priceless personal relationships. This is the principal harm against which the duty of truthfulness under ORS 9.460(4) is designed to protect litigants, apart from the public interest in the integrity of the judicial system itself. The demurrer to that part of plaintiff's complaint was not sustained, and the subsequent rulings were not brought here on review, as the Court points out. 291 Or at 321, note 1.

In concurring, I believe something more should be said about potential civil liability for violation of statutory duties. As recognized in *Miller v. City of Portland,* 288 Or 271, 604 P2d 1261 (1980), one who violates a statute enacted for the protection of the private interests of others may be liable in damages for injuring the protected interest when the statute or its legislative history is silent on the question, even when there is no corresponding common law basis of recovery. 288 Or 276-78; *see supra,* 291 Or at 326. This principle itself has ancient antecedents in common law courts. *See* Salmond, *Law of Torts* 242 (17th ed. 1977); Fricke, *The Juridical Nature of the Action Upon the Statute,* 76 L Q Rev 240, 243-44 (1960).

Lord Campbell in *Couch v. Steel,*[2] decided in 1854, attributed an injured party's right to recover for a statutory

---

[2] 118 Eng Rep 1193 (QB 1854).

wrong to the Statute of Westminster II of 1285 (relying also on Sir Edward Coke's Institutes) though the source in that statute is disputed. Andre', *The Implied Remedies Doctrine and the Statute of Westminster II,* 54 Tul L Rev 589 (1980); *see also* Katz, *The Jurisprudence of Remedies: Constitutional Legality and the Law of Torts in* Bell v. Hood, 117 U Pa L Rev 1 (1968). The action upon a statute was given a separate chapter in Comyns's Digest, citing numerous examples and explaining that an existing common law remedy would continue to coexist with the separate claim on the statute unless the statute expressed or implied the contrary.[3] *Couch v. Steel, supra,* adopted the statement from Comyns that "in every case, where a statute enacts, or prohibits a thing for the benefit of a person, he shall have a remedy upon the same statute for the thing enacted for his advantage, or for the recompence of a wrong done to him contrary to the said law."[4] Other mid-19th century English cases examined damage actions brought for statutory violations to see whether a civil remedy under the statute was meant to be *excluded* by its remedial provisions, not whether a civil remedy was meant to be affirmatively enacted.[5]

Whatever its antecedents, the rule of *Couch v. Steel* was known and cited in the United States. *See, e.g., Willy v. Mulledy,* 78 NY 310 (1879), Andre', *supra* at 593-96, citing cases and texts. This was before the development of a general theory of tort law focused on negligence; in fact, "negligence" originally meant neglect of a duty imposed by law or contract. *See* White, *Tort Law in America* 12-19 (1980). In mid-19th century, when the law now before us,

---

[3] 1 J. Comyns, *A Digest of the Laws of England,* 433-47 (5th ed. London 1822) (1st ed. London 1762).

[4] 118 Eng Rep at 1196-97. One earlier source of the formula is *Anonymous,* 87 Eng Rep 791 (QB 1703).

The Supreme Court of Canada later quoted Comyns's formulation, attributing it to chapter 24 of the Statute of Westminster II. *Orpen v. Roberts,* [1925] 1 DLR 1101. To a Canadian commentator it seemed natural that a statutory violation should be a species of wrongful conduct or "fault" which renders the violator liable for the resulting harm to another, drawing upon Canadian familiarity with civil law as well as common law doctrine. Newman, *Breach of Statute as the Basis of Responsibility in the Civil Law,* 27 Can Bar Rev 782 (1949).

[5] *See, e.g., Stevens v. Jeacocke,* 116 Eng Rep 647 (QB 1848) (fishery act held to exclude a damage action by providing a penalty of L50 and forfeiture of the fish to the injured party).

ORS 9.460, was enacted, an action under a statute by one whom the statute was designed to protect was distinguished from the same person's possible cause of action at common law. Judge Cooley devoted a section in his treatise on torts to "Statutory Duties," covering the problem whether a statutory remedy is meant to replace an existing common law liability as well as the problem of private recovery for breach of a statutory duty.[6] The Supreme Court of the United States recited the doctrine of recovery upon a statutory fault in a 1916 decision under the Federal Safety Appliance acts:

> "A disregard of the command of the statute is a wrongful act, and where it results in damage to one of the class for whose especial benefit the statute was enacted, the right to recover the damages from the party in default is implied."

*Texas & Pacific R. Co. v. Rigsby,* 241 US 33, 39 (1916). That court since has been more ambivalent about the implication of civil liability from federal statutes, partly because unless Congress expressly or impliedly means to employ a private remedy as a means to exercise its delegated powers, damage actions are normally a question of state law.[7]

---

[6] "[I]f performance of the duty is enjoined under penalty, the recovery of this penalty is in general the sole remedy, even when it is not made payable to the party injured. But the rule is not without its exceptions; for if a plain duty is imposed for the benefit of individuals, and the penalty is obviously inadequate to compel performance, the implication will be strong, if not conclusive, that the penalty was meant to be cumulative to such remedy as the common law gives when a duty owing to an individual is neglected. And if the duty imposed is obviously meant to be a duty to the public, and also to individuals, and the penalty is made payable to the State or to an informer, the right of an individual injured to maintain an action on the case for a breach of the duty owing to him will be unquestionable.

"There are always questions of difficulty respecting the remedy when a statute imposes a duty as a regulation of police, without in terms pointing out what shall be the rights on the one side and the liabilities on the other, if the duty is neglected. Is the duty imposed on public grounds exclusively, and if not, what persons or classes of persons are within its intended protection? These are the problems which such statutes usually present."

Cooley, *The Law of Torts* 653-54 (1880).

[7] Recent decisions have tied the implication of civil liability from federal statutes more closely to a search for Congressional intent, *See, e.g., California v. Sierra Club,* 451 US 287, 101 S Ct 177568 LEd2d 101 (1981), *Transamerica Mtg. Advisors, Inc. v. Lewis,* 444 US 11 (1979), and *see generally* Frankel, *Implied Rights of Action,* 67 Va L Rev 553 (1981), Comment, *Implied Causes of Action: A Product of Statutory Construction or the Federal Common Law Power?,* 51 U Colo L Rev 355 (1980).

Unlike Congress, however, state lawmakers legislate in a setting in which judicial recognition of implicit tort liability has never involved jurisdictional questions.

It would, of course, be desirable if legislatures were to indicate their intention to allow or to withhold the right of those injured by violations of statutes passed for their benefit to recover damages from the violator, if not in each individual statute, than by enacting some general formula. That suggestion was made long ago in the House of Lords, in tones mixing resignation with frustration:

" 'To a person unversed in the science or art of legislation it may well seem strange that Parliament has not by now made it a rule to state explicitly what its intention is in a matter which is often of no little importance, instead of leaving it to the courts to discover, by a careful examination and analysis of what is expressly said, what that intention may be supposed probably to be. There are no doubt reasons which inhibit the legislature from revealing its intention in plain words. I do not know, and must not speculate, what those reasons may be. I trust, however, that it will not be thought impertinent, in any sense of that word, to suggest respectfully that those who are responsible for framing legislation might consider whether the traditional practice, which obscures, if it does not conceal, the intention which Parliament has, or may be presumed to have, might not safely be abandoned. . .' "

*Cutler v. Wandsworth Stadium Ltd.* [1949] A.C. 398, 410, quoted in Fricke, *supra* 76 L Q Rev at 256. In the absence of a discoverable intention, however, the court nonetheless faces the task of examining whether the statutory duty said to have been breached implies liability for private injury or excludes it. It is of little moment that a statute is enforceable by other means, for this will normally be the case. Sometimes the nature and details of the prescribed means of enforcement may be a clue to the legislative policy. Often it will be cold comfort to the victim of a

---

*Texas & Pac. R. Co. v. Rigsby, supra,* regarded as the origin of the federal cases, itself dates from the era when common law in the federal courts was less doubtful, before *Erie R. Co. v. Tompkins,* 304 US 64 (1938).

But compare also the implication of private damage actions directly from constitutional violations, *Carlson v. Green,* 446 US 14, 100 S Ct 1468, 64 LEd2d 15 (1980) (eighth amendment), *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 403 US 388 (1971) (fourth amendment).

forbidden act that the wrongdoer will be disciplined, if this excludes liability for damages or other compensation to the injured person, and this policy choice should not be presumed to be implicit in legislative silence.

In this crucial respect, a part of the language from *Burnette v. Wahl,* 284 Or 705, 588 P2d 1105 (1978) included in the court's opinion is distinctly unhelpful because it overstates the court's "own appraisal of the policy considerations involved." *See* 291 Or at 327. The statute is the policy of the legislature, not that of the court, and the court's responsibility is no less in deciding that the policy excludes civil recovery by silence than that it includes it. Implied recovery as much as its denial is attributable to the legislation, not to the court's independent policy choice, because the injured party's claim stands and falls with the statute under which it is asserted, and it disappears as soon as the statute is repealed or amended. *See Burnette v. Wahl, supra,* 284 Or at 727 (dissenting opinion). There is no evident presumption either way.

To assume that statutory silence means to exclude civil recovery attributes to the lawmakers a needlessly hostile policy toward making whole the intended beneficiaries of a statutory obligation imposed for their protection. Rather, when a plaintiff seeks damages for injuries of a kind which a prohibitory or regulatory law was enacted to prevent, the court must decide without preconceived assumptions whether defendant's act violated the law and caused an injury of the kind and to the kind of person contemplated by the protective law, and whether the legislature meant some other remedy or method of enforcement to be exclusive. The Court states that it recites *Burnette* because the parties in this case have not questioned it, and that a different analysis should await another day. Be that as it may, the present decision in any event does not rest on theories about implied private remedies for statutory violations but on a prerequisite for a damage action that one show greater injury than the ordinary effects of being haled into court. I therefore concur in the decision.